Jason DOE, et al., Plaintiffs,

v.

The AMERICAN NATIONAL RED CROSS, et al., Defendants.

Civ. A. No. 2:92–1061.

United States District Court,
S.D. West Virginia,
Charleston Division.

Oct. 6, 1993.

---

Susan Cannon–Ryan, Caldwell, Cannon–Ryan & Riffee, Charleston, WV, W. Harold Flowers, Jr., Maureen R. Witt, Steven C. Choquette, Holland & Hart, Denver, CO, for plaintiffs.

Rebecca A. Betts, Robert D. Cline, Jr., King, Betts & Allen, Charleston, WV, Bruce M. Chadwick, David P. Gersch, David A. Wollin, Susan R. Benda, Ronald D. Lee, M. Sean Laane, Arnold & Porter, Washington, DC, Edward L. Wolf, Assoc. Gen. Counsel, American Red Cross, Washington, DC, for The American National Red Cross, a corporation; The American Red Cross Tri–State Blood Services Region, an Agency of The American National Red Cross and/or corporation; in its own right or as a chapter, division, region or part of The American Red Cross; any unknown responsible officer, employee or director of The American National Red Cross, a corporation, and The American Red Cross Tri–State Blood Services Region.

Ralph C. Dusic, Jr., Dina M. Mohler, Kay, Casto, Chaney, Love & Wise, Charleston, WV, for Charleston Area Medical Center, a West Virginia corporation.

John N. Charnock, Jr., pro se.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are (1) the objections of Defendant American National Red Cross (ARC) to the Magistrate Judge's Order (hereinafter "the Order") regarding donor discovery; (2) the parties' respective motions to modify the Time Frame; and (3) ARC's motion for judgment on the pleadings as to Plaintiffs' demand for punitive damages. For reasons discussed more fully below, the Court **AFFIRMS** in part and **SETS ASIDE** in part the Order; (2) **GRANTS** the respective motions to modify the Time Frame; and (3) **DENIES** without prejudice ARC's motion for judgment on the pleadings.

Plaintiff Jason Doe is infected with the Human Immunodeficiency Virus (HIV), the virus that causes Acquired Immune Deficiency Syndrome (AIDS). Plaintiffs assert, in part, that Jason was infected due to ARC's failure to properly screen a certain HIV infected donor whose donated unit of blood was later transfused into Jason. The donor is now deceased. Plaintiffs assert that discov-

ery of information about the donor is critically important to their claims against ARC.[1]

ARC claims it provided Plaintiffs all ARC documents relating to the donor, but it redacted the documents of any information that might identify the donor. Plaintiffs filed a motion to compel additional donor discovery on July 1, 1993, and ARC responded with a cross-motion for a protective order barring further discovery on July 20, 1993. On August 5, 1993, the Magistrate Judge[2] granted, in part, both Plaintiffs' and Defendants' motions and on August 13, 1993, the Magistrate Judge entered an Order providing, *inter alia:*

1. That Plaintiff may seek discovery regarding the donor;

2. That the name, address, employer, and social security number of the donor shall not be made a part of the record and that depositions regarding the donor refer to him only by a mutually acceptable alias;

3. That ARC must reveal the donor's name, social security number, date of birth, and date of death to Plaintiffs;

4. That Plaintiffs be permitted to discover, without limitation, all of the donor's medical and health care records from January 1, 1980, through June 30, 1988;

5. That Plaintiffs be permitted to contact any of the donor's health care providers for the above-named period; and

6. That the parties be permitted to depose any of these health care providers.

The Order, as it relates to discovery of health care records, provides that any copies of such records shall be disclosed to Defendants. The Order does not permit Defendants to perform independent discovery of these records and also allows Plaintiffs *ex parte* contact, at least in the first instance, with the donor's health care providers. The Order further states "If after obtaining and reviewing the information set forth above, plaintiffs' counsel conclude that they need further information regarding the donor, they shall notify the Court of this fact pursuant to the terms of this Order, and the Court will consider whether such further discovery is appropriate." ARC filed a motion to reconsider on August 17, 1993, which was denied by the Magistrate Judge on August 25, 1993. ARC then filed this appeal.

■ Title 28 U.S.C. § 636(b)(1)(A) provides "A judge of the court may reconsider any pretrial matter ... where it has been shown that the magistrate's order is clearly erroneous or contrary to law." *Federal Deposit Ins. Corp. v. United States,* 527 F.Supp. 942, 949 (S.D.W.Va.1981). ARC asserts two reasons why the Order is clearly erroneous and contrary to law. First, ARC asserts the Order is unprecedented and permits virtually unlimited donor discovery by the Plaintiffs. Second, ARC claims the Order "creates a one-sided discovery scheme giving plaintiffs greater access to discovery than" ARC. This opinion addresses each argument in turn.

With one exception, the authorities cited by ARC are from non-binding jurisdictions.[3]

---

1. For instance, Plaintiffs claim the absence of "surrogate testing" and the possibility that the donor would have exhibited a "surrogate marker" will be important in supporting the element of causation. Surrogate testing probes for factors that are often present in those suffering from AIDS. *See Quintana v. United Blood Servs.,* 811 P.2d 424, 426 (Colo.Ct.App.1991). Surrogate testing was suggested as a means for screening out those donors at high risk of HIV infection prior to the development of present tests identifying HIV antibodies themselves. *Id.* For instance, up to ninety percent of those with AIDS might test positive for the surrogate marker of Hepatitis B–Core Antibody (HBCA). *See* Daniel L. Russo, Jr., Comment, *Blood Bank Liability to Recipients of HIV Contaminated Blood,* U.Dayton L.Rev. 87, 102 (1992). Plaintiffs assert a strong showing of causation results if the donor's medical records reveal he was positive for HBCA and

no surrogate testing for such was performed by ARC.

2. Pursuant to 28 U.S.C. § 636(b)(1)(A), a Standing Order entered November 25, 1991, refers all discovery issues arising in Charleston Division civil actions to the Honorable Jerry D. Hogg, United States Magistrate Judge.

3. These cases illustrate the difficulty in finding the Magistrate Judge's ruling was clearly erroneous or contrary to law. Indeed, the Court in *Watson, infra,* cited with approval a commentator who recognized:

Although all courts have analyzed the question of compelling discovery within this balancing framework, *their conclusions vary.* Some courts have flatly denied discovery; others have permitted different forms of limited dis-

The United States Court of Appeals for the Fourth Circuit addressed donor discovery in *Watson v. Lowcountry Red Cross*, 974 F.2d 482 (4th Cir.1992). In *Watson*, like the instant case, the Red Cross was able to identify the living donor of the HIV infected blood. *Id.* at 484. The plaintiff sought information about the donor's background. *Id.* The court concluded it was not an abuse of discretion for the district court to hold the identity of the donor in confidence and retain an independent attorney to conduct donor discovery on the parties' written interrogatories. *Id.* at 489. The Red Cross contended, in part, that plaintiff's interest in the discovery was outweighed by the donor's privacy interests. *Id.* at 485. The court's response to this argument, especially in the case of a living donor, is instructive:

> At most, the invasion of the donor's privacy is minimal, and this interest is greatly outweighed by the plaintiff's need for the information and the related public interest in seeing that injuries are compensated.

*Id.* at 488.

The donor in this case is deceased. While there is a question as to whether the donor's privacy interest survived him, there is no dispute that a deceased's privacy interest is considerably lessened.[4] While the inquiry permitted by the Order is broader than the plan approved of in *Watson*, ARC's contention the Order "is unprecedented in its breadth" is without merit. The Order is only another variant of the many decisions *moulding* limited discovery, given the circumstances. *See, e.g., Sampson v. American Nat. Red Cross*, 139 F.R.D. 95, 99–100 (N.D.Tex.1991) (permitting plaintiff's counsel to conduct an in-person deposition of a living donor as well as the disclosure of the donor's identity to plaintiff's expert).

■ The Order certainly looks after whatever remains of the donor's privacy interest and it limits the discoverable evidence that Plaintiffs might otherwise seek. For instance, the Order prohibits practically all of the donor's identifying information from appearing in the record. Also, any depositions regarding the donor allow reference to him only by alias.[5] Neither the identity of the donor nor his social security number may be released even to the parties' experts. The Order further forbids Plaintiffs, at this juncture, from any contacts with survivors, coworkers, friends, acquaintances, and a host of other potentially relevant sources of information.[6]

---

covery. *While the particular facts surrounding each discovery request certainly influence the courts' decisions, the variations in judicial decisions reflect differing weights that courts accord to the competing interests.*
Peter B. Kunin, Note, *Transfusion–Related AIDS Litigation: Permitting Limited Discovery From Blood Donors in Single Donor Cases*, 76 Cornell L.Rev. 927, 929 (1991) (emphasis added). It was suggested the Court judge the correctness of the Order with reference to the size of the litigants respective supporting string citations. *See* Defs.' Objections at 5 n. 3; Pls.' Resp. at 4 n. 1. These varying judicial conclusions, however, are of little assistance to the Court. The decisions often turn on peculiar factual ingredients of the case rather than principled and reasoned adherence to one particular side of the issue.

4. ARC has conceded, and the Court agrees, "no one can deny that the [deceased] donor's privacy interests are diminished." Tr. of Hr'g at 26.

5. The parties disagree about how far the Order goes to protect the identity of the donor from being disclosed to third parties. Defendants assert there is no protection from disclosure.
   The Order implicitly provides, however, for the disclosure of the donor's identity only to those

few health care providers who might be interviewed or deposed by the parties. Many, if not all, of these providers were no doubt aware of the donor's medical condition prior to his death. The Court trusts that these providers will be instructed or reminded of the sensitive nature of this information and that casual disclosure of this sensitive patient information to other third parties will not occur.
   As for the records at issue, the sealed Order directing the release of such speaks for itself in bold print:
   **The identity of the person named herein is confidential. The contents of and your compliance with this Order should be handled accordingly.**

6. Close attention will be given to the propriety and necessity of any future request by Plaintiffs to contact these individuals. The Court might reach a different conclusion under the privacy balancing test if a later discovery order permits contact with family members and close friends, some of whom may not even be aware of the donor's HIV status. The Court will not address this issue on the present record.

Further, the record indicates the donor may have deceived those who posed screening questions to him at the various times he donated blood.[7] This conduct, compared with the untold suffering endured by the blameless infant in this case, also should be considered in concluding which party's interest should be given paramount consideration.[8] Given the protections from disclosure and limitations on discovery provided, the Magistrate Judge determined the donor's diminished expectation of privacy was outweighed by Plaintiff's need for the information and the related public interest in seeing that Plaintiffs' injuries are compensated. The Court is unable to conclude this portion of the Order is clearly erroneous or contrary to law.[9]

The Court next addresses ARC's claim the Magistrate Judge "creat[ed] an unfair one-sided discovery scheme." ARC takes issue with paragraphs 5, 4, and 10 of the Order. These paragraphs respectively provide for (1) *ex parte* interviews by Plaintiffs of the donor's health care providers; (2) discovery of medical records by Plaintiffs only;[10] and (3) further formal requests for discovery by Plaintiffs only.

It is a "fundamental maxim of discovery that '[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.'" *Société Nationale Industrielle Aérospatiale v. United States District Court*, 482 U.S. 522, 540 n. 25, 107 S.Ct. 2542, 2553 n. 25, 96 L.Ed.2d 461 (1987) (citing *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947) (stating "Discovery, in other words, is not a one-way

proposition"). While there is an argument to be made that ARC failed to timely request this information, the principle announced in *Hickman* must prevail. Pursuant to § 636(b)(1)(A), the Court concludes this portion of the Order is contrary to law and **ORDERS** that Defendant, as well as Plaintiff, may (1) interview the donor's health care providers, (2) discover donor's health care records, (3) and make further formal requests for discovery, all as more fully outlined in, and qualified by, the Order. Given the sensitive nature of the case and in the interests of efficiency and economy, the parties should endeavor, to the extent feasible, to work in tandem on such discovery. In all other respects, the Order is **AFFIRMED**.

The Court **GRANTS** the parties' respective motions to modify the Time Frame and **ORDERS** as follows:

1. All discovery shall be completed by December 6, 1993.

2. All dispositive motions shall be filed by December 29, 1993, with response and reply due thereafter in accordance with the Local Rules.

3. Counsel for the Plaintiffs shall prepare their portion of the proposed pretrial order and submit it to counsel for the Defendants by January 29, 1994, and counsel for the Defendants shall submit the proposed pretrial order, fully integrated, to the Court for entry on or before February 12, 1994.

4. Counsel shall submit proposed jury instructions on or before March 14, 1994.

---

7. Counsel for ARC stated in a hearing before the Magistrate Judge "This donor, for all intents and purposes, would appear not to have been honest when he was asked questions that specifically were designed to elicit [whether he was a member of a high-risk group]." Tr. of H'rg at 24.

8. In *Long v. American Red Cross*, 145 F.R.D. 658 (S.D.Ohio 1993), the court stated:

Thus, a fairly compelling argument can be advanced that if someone knows or should know that his blood is unsuitable for donation and may cause injury to others if transfused into them, by donating blood the person gives up any legitimate expectation that information about his or her medical condition will not, at some point, be divulged at least to the person

who received the blood, and possibly to others as well if it is necessary in order for the injured party to pursue a legal claim.
*Id.* at 664–65.

9. ARC strenuously asserted below that permitting donor discovery would adversely affect the adequacy of the nation's blood supply. To the extent ARC reasserted this contention on appeal, the Court does not find the Magistrate Judge's conclusion to be clearly erroneous or contrary to law.

10. Plaintiff must share these records with Defendants, but Defendants are not permitted to engage in their own investigation of these records in the first instance.

5.   A pretrial conference shall be held at 1:00 p.m. on March 7, 1994, in Charleston.

6.   A final settlement conference shall be held at 1:00 p.m. on April 4, 1994, in Charleston.

7.   The trial of this action shall commence at 9:30 a.m. on April 5, 1994, in Charleston.

8.   With the exception of the above modifications, the requirements and directives of the previously entered Time Frame Order shall remain in full force and effect.

On July 15, 1993, ARC filed a motion for judgment on the pleadings as to Plaintiffs' demand for punitive damages.   On August 18, 1993, the Magistrate Judge entered an Order extending the response time on this motion until 15 days after the close of discovery.   Given the modified Time Frame Order extending discovery and other deadlines, ARC's motion for judgment on the pleadings is **DENIED** without prejudice.   ARC is granted leave to refile the motion at the time designated for filing of dispositive motions.