**Giselle BERMAN, Plaintiff,**

v.

**AMERICAN NATIONAL RED CROSS, Defendant.**

No. 3:93cv0377AS.

United States District Court, N.D. Indiana, South Bend Division.

Aug. 6, 1993.

Hugo E. Martz, Valparaiso, IN, for plaintiff.

Paul J. Peralta and Kevin D. O'Rear, South Bend, IN, for defendant.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

#### A. Summary of the Case

The American National Red Cross is a not-for-profit corporation chartered by the Congress of the United States with authority to sue and be sued. Recently the Supreme Court of the United States opined that cases in the United States Courts involving the Red Cross invoked federal question jurisdiction. *See, American National Red Cross v. S.G. and A.E.,* —— U.S. ——, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992). Here that Federal question jurisdiction is invoked. The question raised is whether claims in this court against the Red Cross are entitled to a trial by jury under Amendment VII of the Constitution of the United States. The few courts confronting this question have generally answered it in the negative. The question deserves careful attention.

#### B. Procedural History

On June 2, 1993, Plaintiff Giselle Berman ("Berman"), by counsel, brought a complaint against the American Red Cross ("Red Cross"). Berman alleged in her complaint that the Red Cross, through its authorized agent or employee, negligently attempted to draw her blood and as a direct and proximate cause of said negligence, she suffered excruciating pain, lost wages, medical bills, and has been permanently impaired (Plaintiff's Complaint 1–2). Berman prays for judgment against the Red Cross in a sum which reasonably covered her injuries, damages, costs, and all other just and proper relief. Berman demands a jury trial to decide these issues.

Berman alleges that jurisdiction is conferred upon this court under 28 U.S.C. § 1332 by virtue of diversity of citizenship in that she is a resident and citizen of the State of Indiana, and the Defendant, American National Red Cross, was chartered by Congress as an instrumentality created by the Federal Government, whereby the Defendant has its

principal office and domicile in the District of Columbia. Berman also alleges that the amount in controversy exceeds $50,000.

On July 22, 1993, the Red Cross, by counsel, answered Berman's complaint and admitted that federal courts have original jurisdiction over all cases to which the Red Cross is a party, that the domicile of the Red Cross is in the District of Columbia, and that on or about February 4, 1992, Berman attempted to donate blood. The Red Cross denied all other allegations.

On July 26, 1993, a Motion to Strike Demand for Jury Trial and a Supporting Memorandum of Law was submitted to this court by the Red Cross. In their Motion to Strike, the Red Cross alleged that they are a federally chartered organization and an instrumentality of the Federal Congress, and as such, the right to trial by jury granted by the Seventh Amendment of the Constitution does not apply to the Red Cross. The Red Cross requested that this court strike Berman's Demand for a Jury Trial and set this action for trial by the court.

## C. Issue Before the Court

■ The Seventh Amendment right to trial by jury does not apply in actions against the Federal Government. *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981). The Red Cross contends that, as a federally chartered instrumentality, 36 U.S.C.A. §§ 1, *et seq,* it has the same sovereign immunity from trial by jury as the United States. Specifically, this court must sequentially decide the following issues: (1) whether the Red Cross has sovereign immunity, and if so, (2) to what extent is that immunity abrogated by 36 U.S.C.A. § 2 which grants the Red Cross "the power to sue and be sued".

## D. Applicable Law and Discussion

The seed which eventually sprouted the American National Red Cross was first sown at the 1863 International Conference at Geneva. The International Conference recommended "that there exist in every country a committee whose mission consists in cooperating in times of war with the hospital service of the armies by all means in its power". 36 U.S.C.A. § 1 (1988 Supp.1993), Preamble, Act Jan. 5, 1905, as amended by Act May 8, 1947, c. 50 §§ 1, 2, 61 Stat. 80. The United States chartered its committee as "The American National Red Cross" in 1905 and continued the charter in 1947. *Id.* The duties of the Red Cross have since expanded to include peace-time activity as well as hospital service for warring armies.[1] To assist the Red Cross in properly executing its duties, Congress determined that the Red Cross should have "the power to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." 36 U.S.C.A. § 2 (1988 Supp.1993).

■ This "power to sue and be sued" language is at the crux of the debate as to whether Berman is entitled to a jury trial; however, the language also has an important bearing upon this court's jurisdiction. In her complaint, Berman alleges that this court has proper jurisdiction under 28 U.S.C. Section 1332 because of diversity of citizenship and because the amount in question exceeds $50,000. However, as this court mentioned previously, the Supreme Court recently held that the Federal charter authorizing the American National Red Cross "to sue and be sued in court of law and equity, State or Federal, within the jurisdiction of the United States" confers original federal jurisdiction; therefore, this court finds it unnecessary and improper to approach this case under § 1332. *American National Red Cross v. S.G. and A.E.,* —— U.S. at ——, 112 S.Ct. at 2476.

---

1. The duties of the Red Cross include the following:

(1) furnish aid to the sick and wounded of Armed Forces in time of war in accordance with treaties that the United States of America has given its adhesion, ... (2) act in matters of voluntary relief and in accord with the military authorities as a medium of communication between the people of the United States of America and their Armed Forces, ... [and] (3) to continue and carry on a system of national and international relief in time of peace and apply the same in mitigating the sufferings caused by pestilence, famine, fire, floods, and other great national calamities, and to devise and carry on measures for preventing the same.

36 U.S.C.A. § 3 (1988 Supp.1993).

Returning to the discussion of a civil jury trial, this court notes that historically, the right to a civil jury trial was not nearly as absolute as the right to a jury in a criminal trial. The latter was honored in the original Constitution of 1787 as well as Amendment VI, but the right to a civil trial by jury was not. The existence of a right to a civil jury trial and the means of guaranteeing that right was debated by our Founding Fathers at both the Constitutional Convention and during the Constitution's subsequent ratification process. *See*, James Madison, *Notes of Debates in the Federal Convention of 1787*, September 12, 1787; *The Federalist*, No. 83 (Alexander Hamilton). In No. 83 of The Federalist Papers, Alexander Hamilton proclaimed one of the benefits of a jury when he wrote, "The temptations to prostitution, which the judges might have to surmount, must certainly be much fewer while the co-operation of a jury is necessary, than they might be if they had themselves the exclusive determination of all causes." Mr. Hamilton also sought to reassure the "People of New York" that their right to a civil jury trial was secure when he argued that the Constitution's failure to expressly provide for civil jury trials did not by implication abolish civil jury trials.

Notwithstanding the eloquent writings in the Federalist Papers, the people of the various states were more comfortable with written guarantees to protect what they determined were basic rights. Therefore, twelve amendments purporting to guarantee those basic rights were sent for ratification to the states. Of the eleven amendments which were subsequently ratified, (The 27th Amendment ratified in 1993 was one of the original Bill of Rights amendments) Amendment VII provided that:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

*U.S. Const.* amend. VII.

Reflecting the governing power of the Seventh Amendment, the Federal Rules of Civil Procedure require "the trial of all issues so demanded shall be by jury." Fed.R.Civ.P. 39(a)(2) (1993 ed.). However, the Federal Rules also acknowledge that a civil jury trial is not proper if "the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or Statutes of the United States." *Id.*

Conscious of the "common law" language of the Seventh Amendment, courts often look to either the remedy sought or the nature of the suit being brought in order to determine if a right to trial by jury does not exist under the Constitution or Statutes of the United States. For example, "actions that are analogous to 18th-century cases tried in courts of equity or admiralty do not require a jury trial." *Tull v. U.S.*, 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987) (dictum citing, *Parsons v. Bedford*, 3 Pet. 433, 7 L.Ed. 732 (1830)). However, the Supreme Court has also decided that the personality of a party to a suit may dictate whether a civil jury trial will be granted.

In a case involving the Age Discrimination in Employment Act ("ADEA"), the Supreme Court of the United States held that "the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government." *Lehman*, 453 U.S. at 160, 101 S.Ct. at 2701. The *Lehman* court held that the United States, as a sovereign, is immune from suit unless it consents to be sued. Moreover, the Supreme Court also indicated that even if Congress waives the immunity from suit, a plaintiff has a right to civil trial by jury against the Government only when Congress affirmatively and unambiguously grants the right to jury trial by statute. The Court explained that immunity from trial by jury is based upon the doctrine of sovereign immunity:

> The reason that the Seventh Amendment presumption in favor of jury trials does not apply in action at law against the United States is that the United States is immune from suit, and the Seventh Amendment right to a jury trial, therefore, never exist-

ed with respect to a suit against the United States.

*Id.* at 162 n. 9, 101 S.Ct. at 2702 n. 9.

█ Therefore, like the accused who is clothed in the cloak of innocence until proven guilty, the Government is protected from civil suit by the armor of sovereign immunity until it voluntarily chooses to remove that armor. Congress normally waives sovereign immunity by incorporating language allowing the governmental entity to sue and be sued. The permissive language usually states that the entity has the power to sue and be sued and sometimes mentions in which courts the entity may sue and be sued. (*e.g.* 16 U.S.C.A. § 831c (1988 Supp.1993) provides that the Tennessee Valley Authority "May sue and be sued in its corporate name") In addition to the language granting the power to sue and be sued, Congress often specified that a plaintiff had no right to a civil trial by jury. *Lehman* at 162, 101 S.Ct. at 2702. However, as the *Lehman* holding clearly indicates, the Court is not concerned with language *prohibiting* a jury trial, but instead looks for language *granting* the right to a trial by jury. Absent an express grant of a civil trial by jury, the *Lehman* holding is clear, there can be no civil jury trial against the Government.

█ The next question logically becomes, what is the "Government"? Other courts have applied the law of *Lehman* to organizations that have been deemed "instrumentalities" of the Federal Government. *See, e.g. Young v. U.S. Postal Service,* 698 F.Supp. 1139 (S.D.N.Y.1988) (Postal service held immune from jury trial), *mandamus denied, In re Young,* 869 F.2d 158 (2nd Cir.1989); *Jones–Hailey v. T.V.A.,* 660 F.Supp. 551 (E.D.Tenn.1987) (No jury action against Tennessee Valley Authority).

However, some courts have been reluctant to extend sovereign immunity. *See, e.g., Al-*

*gernon Blair Indus. Contractors, Inc. v. Tennessee Valley Authority,* 552 F.Supp. 972, 973–74 (M.D.Ala.1982) (holding that the TVA from creation has not enjoyed sovereign immunity and has been subject to suit like any other private corporation. However, that court also noted that the nature of the suit was in contract, which traditionally was an issue for a jury.) Similarly, in *Hanna v. Federal Land Bank Association of Southern Illinois,* 903 F.2d 1159 (7th Cir.1990) the Court of Appeals reversed a District Court's decision that a plaintiff who filed suit against a land bank alleging age discrimination under ADEA was not entitled to a jury trial.[2] Although the land bank's chartering language said that the land bank was a federal instrumentality, the *Hanna* court joined other courts in holding that land banks are private employers without sufficient governmental involvement to constitute exemption from jury trials under ADEA.[3] *Id.* at 1162. Possibly because the land bank in *Hanna* eventually conceded that the plaintiff was entitled to a jury trial, the court chose not to expound upon criteria used to determine if an agency had sufficient governmental involvement to constitute exemption from jury trials. Clearly however, *Hanna* shows that it takes more than a congressional designation as a federally chartered instrumentality to become protected by sovereign immunity. The *Hanna* court did note that although the land banks were highly regulated by the government, they remained farmer owned and operated agencies and thus were not entitled to sovereign protection from civil trials by jury.

This court looks to the Supreme Court of the United States for further guidance as to what criteria should be used to decide if the Red Cross has sufficient governmental involvement to be protected from civil jury trial by sovereign immunity. For example, in a tax immunity case, the U.S. Supreme

---

**2.** A federal land bank association is defined in the statutes as a "federally chartered instrumentality of the United States" that may be organized by any group of 10 or more persons desiring to borrow money from a Farm Credit Bank under section 2015(a) of Title 12 of the United States Code. 12 U.S.C.A. §§ 2071(a), 2091(a) (1988 Supp.1993); *Hanna* at 1160. (citations omitted).

**3.** Other courts holding land banks subject to civil jury trial include: *Delaigle v. Federal Land Bank of Columbia,* 568 F.Supp. 1432, 1439 (S.D.Ga. 1983); *Federal Land Bank of Columbia v. Cotton,* 410 F.Supp. 169 (N.D.Ga.1975); *South Central Iowa Production Credit Association v. Scanlan,* 380 N.W.2d 699, 703 (Iowa 1986).

Court held that the Red Cross's day-to-day activities demonstrated that it was a government instrumentality and that as a governmental instrumentality not subject to state tax. *Department of Employment v. United States*, 385 U.S. 355, 359, 87 S.Ct. 464, 467, 17 L.Ed.2d 414 (1966). Although this Plaintiff's case regards tortious conduct and is not a tax immunity case, this court finds the Supreme Court's reasoning highly relevant in considering whether the Red Cross should be equated with Government and as such, protected by sovereign immunity.

In reaching the conclusion that the Red Cross is an instrumentality of the United States for purposes of immunity from state taxation levied on its operations, and that its immunity was not waived by congressional enactment, the Court indicated that the Red Cross met the country's obligations under a variety of treaties and performed "a wide variety of functions indispensable to the workings of our Armed Forces around the globe, and ... assist[s] the Federal Government in providing disaster assistance to the States in times of need." *Id.* at 360, 87 S.Ct. at 467.

> Congress ... subjected the [Red Cross] to governmental supervision and to a regular financial audit by the Defense Department. Its principal officer is appointed by the President, who also appoints seven (all government officers) of the remaining 49 governors. By statute and Executive Order there devolved upon the Red Cross the right and *the obligation* to meet this Nation's Commitments under various Geneva Conventions, to perform a wide variety of functions indispensable to the workings of our Armed Forces around the globe, and to assist the Federal government in providing disaster assistance to the States in time of need. Although its operations are financed primarily from voluntary private contributions, the Red Cross *does* receive substantial material assistance from the Federal Government.

*Id.* at 359, 87 S.Ct. at 467. (citations and footnotes omitted, emphasis added.)

Unfortunately, the Supreme Court did not indicate what factors should be given the most weight when considering whether to equate the Red Cross with the Government. For example, the source of funding, the status of the personnel, the accountability to the government and the nature of the Red Cross' duties are all relevant areas of inquiry.

With an important exception being the Federally provided headquarters, the Red Cross depends upon private funds for carrying out its duties. 36 U.S.C.A. § 13 (1988 Supp.1993); *Department of Employment* at 359, 87 S.Ct. at 467. The Red Cross Board of Governors has fifty members. Eight members, including the principal officer of the Red Cross, are appointed by the President. 36 U.S.C.A. § 5(a). However, at least one of the President's selections must be a member from the armed forces, and the rest must be officials of the departments and agencies of the Federal Government, whose positions qualify them to contribute toward the objectives of the Red Cross. *Id.* The remaining Governors are elected either at large or by the local chapters. *Id.* Membership to the local chapters is open to all people of the United States, its Territories, and dependencies upon payment of a sum specified from time to time. *Id.* at § 4a. Furthermore, the Red Cross is subject to a Department of Defense audit each year with the cost of the audit being paid by the Federal Government. 36 U.S.C.A. §§ 6, 7 (1988 Supp.1993). However, this court finds it is the duties of the Red Cross that tilts the balance towards equating the Red Cross with the Government. The fact that the Red Cross must carry out the Government's obligations resulting from the Geneva treaties is very persuasive. It disquiets this court to think that the Government would entrust just any organization to carry out its treaties. The power to treat with other nations is reserved solely to the Federal Government with the President having the power, by and with the advice and consent of the Senate, to make treaties, provided two-thirds of the Senators present concur. U.S. Const. Article II, § 2, cl. 2.

Considering the above mentioned facts, this court concludes there is a sufficient relationship between the Red Cross and the Government to allow the Government's suit of sovereign immunity armor to protect the Red

Cross from trial by jury. The fact that the Government organized the Red Cross as a corporation rather than as an agency does not change the Red Cross' inherently governmental purpose nor, consequently, its immunity from suit. *See e.g., Jones–Hailey* at 552 (citing *Cherry Cotton Mills, Inc. v. United States,* 327 U.S. 536, 539, 66 S.Ct. 729, 730, 90 L.Ed. 835 (1946)).

 Having decided that the Red Cross should be equated with the government, this court next examines to what extent Congress has waived the Red Cross' immunity from suit. Although it is clear Congress waived portions of the immunity when it required the Red Cross "to sue and be sued", the Act which established the American National Red Cross is silent as to the availability of jury trials. It is therefore but a small step for this court to find that Congress did not affirmatively and unambiguously grant the right to civil jury trial by statute as is required by the *Lehman* holding. Moreover, this court is not alone in reaching the same conclusion. Two recent District Court decisions have held that the Red Cross enjoys sovereign immunity as "Government" and thus is not subject to jury trial. *Barton v. American Red Cross,* 826 F.Supp. 412 (S.D.Ala.1993) held that "the Red Cross is entitled to the same immunities from litigation as those enjoyed by the federal government, including immunity from trial by Jury". Similarly, *Johnson v. Hospital of the Medical Coll. of Pennsylvania,* 826 F.Supp. 942 (E.D.Pa.1993) found that "the Red Cross has sufficient connection with the federal government to have the same immunity to trial by jury as the federal government."

### E. Conclusion

This court does not deny a plaintiff the right to a jury lightly. It is only after thoroughly researching the relevant law and giving this case much thought that this court now holds that there exists sufficient connection between the federal government and the Red Cross to grant the Red Cross the same immunity from trial that is enjoyed by the federal government. This court further holds that because Congress failed to expressly indicate that the Red Cross should be subject to a civil jury trial, the Red Cross should not be subject to a civil jury trial. This court emphasizes the Plaintiff has only lost the right to a civil jury trial and that at this point in time, Berman still has access to this court for legal redress by way of a bench trial. Thus, for the reasons described herein, the Red Cross' Motion to Strike Demand for Jury Trial is hereby **GRANTED.**