Jason DOE, et al., Plaintiffs,

v.

The AMERICAN NATIONAL RED
CROSS, et al., Defendants.

Civ. A. No. 2:92–1061.

United States District Court,
S.D. West Virginia,
Charleston Division.

Feb. 25, 1994.

Susan Cannon–Ryan, Caldwell, Cannon–Ryan & Riffee, Charleston, WV, W. Harold Flowers, Jr., Maureen R. Witt, Steven C. Choquette, Holland & Hart, Denver, CO, for plaintiffs.

Rebecca A. Betts, Robert D. Cline, Jr., King, Betts & Allen, Charleston, WV, Bruce M. Chadwick, David P. Gersch, David A. Wollin, Susan R. Benda, Ronald D. Lee, M. Sean Laane, Arnold & Porter, Washington, DC, Edward L. Wolf, Assoc. Gen. Counsel, American Red Cross, Washington, DC, for defendants.

Ralph C. Dusic, Jr., Dina M. Mohler, Kay, Casto, Chaney, Love & Wise, Charleston, WV, for Charleston Area Medical Center.

John N. Charnock, Jr., pro se.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is a motion to strike plaintiffs' jury demand and for judgment on the pleadings as to plaintiffs' demand for punitive damages, filed by Defendant American National Red Cross ("ARC"). Plaintiffs brought this state-law tort action against ARC in the Circuit Court of Kanawha County, West Virginia, alleging *inter alia* that Plaintiff Jason Doe, an infant, was infected with the Human Immunodeficiency Virus ("HIV") by a transfusion during surgery of contaminated blood supplied by ARC. Defendants removed the action to this Court based on *American National Red Cross v. S.G.*, —— U.S. ——, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992), where the Supreme Court held the "sue and be sued" clause in ARC's charter[1] confers federal jurisdiction over cases involving ARC. *Id.* at ——, 112 S.Ct. at 2472.

ARC contends that although Congress permits it to "sue and be sued," the corporation's status as an "instrumentality of the United States" cloaks it in sovereign immunity and shields it from jury trials and punitive

---

1. ARC is a federally chartered corporation. 36 U.S.C. §§ 1–16. Congress included among ARC's enumerated corporate powers the capacity to "sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States...." 36 U.S.C. § 2.

damages.[2] A number of district courts have agreed with ARC's analysis. *E.g., Berman v. American National Red Cross*, 834 F.Supp. 286, 291–92 (N.D.Ind.1993); *Johnson v. Hosp. of Medical College of Pa.*, 826 F.Supp. 942, 945 (E.D.Pa.1993); *Barton v. American Red Cross*, 826 F.Supp. 412, 415 (M.D.Ala.1993).[3] This Court does not. For reasons that follow, the Court **DENIES** ARC's motion.

### I.

ARC's contention it shares the shield of sovereign immunity is grounded largely on *Lehman v. Nakshian*, 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1980). The *Lehman* Court restated the longstanding principle that the Seventh Amendment right to trial by jury does not apply in actions against the federal government, and held the United States, as sovereign, waives its immunity from jury trial only where such a waiver is "unequivocally expressed" as a term of the government's consent to be sued. *Id.* at 160–61, 101 S.Ct. at 2701–02.

ARC employs the *Lehman* decision, as did the courts in *Berman, Johnson,* and *Barton,* as the foundation for its conclusion that the "sue and be sued" provision in ARC's charter does not *completely* waive ARC's sovereign immunity; ARC argues that because its "sue and be sued" clause contains no specific and unequivocal waiver of immunity from trial by jury and punitive damages, it is immune by virtue of residual immunity from all but "those things necessary to commence and maintain a legal proceeding to permit full compensation." *Barton,* 826 F.Supp. at 414–15.

This analysis of *Lehman* derives primarily from the decision in *Young v. United States Postal Service,* 698 F.Supp. 1139 (S.D.N.Y. 1988). In *Young,* the court struck the jury demand of a former postal clerk in a wrongful discharge action against the postal service, holding based on *Lehman* that because the postal service's "sue and be sued" clause does not mention a jury trial, Congress did not "affirmatively and unambiguously" provide for such a right. The Second Circuit later denied plaintiff's petition for mandamus on the jury trial issue "for substantially the reasons stated in Judge Carter's comprehensive opinion...." *In re Young,* 869 F.2d 158, 159 (2d Cir.1989).

The *Barton* and *Johnson* courts relied on *Young* en route to their conclusion that ARC's "sue and be sued" provision left intact enough sovereign immunity to protect the corporation from jury trial. *Barton,* 826 F.Supp. at 414–15; *Johnson,* 826 F.Supp. at 944–45. The *Berman* court also referenced *Young,* as well as *Barton* and *Johnson. Berman,* 834 F.Supp. at 290, 292. No other court has cited *Young* in a published opinion.

### II.

The Court need not quarrel with ARC's claimed status as a quasi-governmental entity.[4] The Supreme Court in *Dept. of Employ-*

---

2. The parties have assumed ARC is not a federal agency subject to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2402, 2671–2680.

3. Although several courts have concluded ARC is not immune from trial by jury, *e.g. Doe v. American National Red Cross*, No. 91–03–CIV–3–BR (E.D.N.C. August 5, 1992); *Bentz v. American Red Cross*, No. 88–7608, 1990 WL 94011, at *1 (E.D.Pa. July 3, 1990); *State ex rel. American National Red Cross v. Pokorny,* 79 Ohio App.3d 419, 607 N.E.2d 524, 526 (1992), each has done so without substantial comment.

    ARC represents no court has subjected it to punitive damages. *E.g. Barton v. American Red Cross*, 826 F.Supp. 407, 411 (1993); *Doe v. American National Red Cross*, 837 F.Supp. 121, 122 (E.D.N.C.1992).

4. For purposes of determining ARC's amenability to jury trial and punitive damages, the Court assumes all ARC's divisions have quasi-governmental status. However, the Court divines ARC's blood-banking services are not eleemosynary or governmental in nature, but rather essentially constitute a private commercial enterprise. ARC has elected to participate and compete with private corporations in the blood services industry. ARC's blood services division maintains financial and managerial independence from its divisions which perform chartered activities, and generates significant "excess revenues." As a full-fledged industry participant, ARC should be subject to jury trial, punitive damages, and all other incidents of litigation as are its customers and competitors. *Contra Reisner v. Regents of the University of California,* No. CV–91–1252–JMI, slip op. at 5 (C.D.Cal. Aug. 22, 1991) (unpublished decision holding ARC's blood-banking service is not an *ultra vires* activity in terms of its national charter).

*ment v. United States,* 385 U.S. 355, 359–60, 87 S.Ct. 464, 467–68, 17 L.Ed.2d 414 (1966), noted that "both the President and the Congress have recognized and acted in reliance upon the Red Cross' status virtually as an arm of the Government." In that decision, the Court concluded "[a]lthough there is no simple test for ascertaining whether an institution is so closely related to governmental activity to become a tax-immune instrumentality, the Red Cross is clearly such an instrumentality."[5] *Id.* at 358–59, 87 S.Ct. at 466–67. More recently, in *American National Red Cross v. S.G.,* —— U.S. ——, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992), a case similar factually to this one, the Court held the "sue and be sued" clause in ARC's charter "confers original jurisdiction on federal courts over all cases to which the Red Cross is a party, with the consequence that the organization is thereby authorized to removal from state to federal court of any state-law action it is defending." *Id.* at ——, 112 S.Ct. at 2467.

■ The issue before the Court is narrow: is the right to jury trial and to assert punitive damages encompassed within the "sue and be sued" provision in ARC's charter? The issues are of first impression in this District and Circuit.

The Supreme Court has interpreted "sue and be sued" clauses on numerous occasions. In *Keifer & Keifer v. Reconstruction Finance Corp.,* 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939), the seminal case, the Court addressed whether a subsidiary corporation established by the Reconstruction Finance Corporation ("RFC"), itself a federally chartered corporation, was shielded from suit by sovereign immunity.

RFC's congressional charter included a "sue and be sued" clause similar to that in ARC's charter. The Court held that even though Congress did not include in legisla-

tion authorizing RFC to incorporate subsidiaries a provision permitting the subsidiaries to sue and be sued, Congress' firm practice of allowing federally chartered corporations to sue and be sued "reveals a definite attitude on the part of Congress which should be given hospitable scope." *Id.* at 391, 59 S.Ct. at 519. Noting that the doctrine of governmental immunity has been "appropriately confined," the Court held that "the government does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work." *Id.* at 388, 59 S.Ct. at 517.

A year later, in *FHA v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), the Court held the Housing Administration subject to garnishment for moneys due to an employee. FHA had argued that as a United States agency, it was immune from garnishee proceedings. *Id.* at 244, 60 S.Ct. at 490. The *Burr* Court distinguished an earlier case where the Court disallowed creditors' attachment of wages held by a federal disbursing officer, *Buchanan v. Alexander,* 45 U.S. (4 How.) 19, 11 L.Ed. 857 (1846), explaining the *Buchanan* ruling "was derived from the principle that the United States cannot be sued without its consent. There no consent whatsoever to 'sue and be sued' had been given. Here the situation is different." *Burr,* 309 U.S. at 244, 60 S.Ct. at 490.

The *Burr* Court clearly articulated the appropriate standard a court should employ when construing a "sue and be sued" clause:

> As indicated in [*Keifer & Keifer*], we start from the premise that such waivers by Congress of governmental immunity in case of such federal instrumentalities should be liberally construed. This policy is in line with the current disfavor of the doctrine of governmental immunity from suit, as evidenced by the increasing tendency of Congress to waive the immunity

Because the Court finds Congress has waived completely ARC's sovereign immunity, it does not address whether the essentially private nature of ARC's blood services division renders it separable for purposes of this analysis.

**5.** Although the *Dep't of Employment* case held ARC as a federal instrumentality is immune from a state unemployment compensation tax, ARC

incorrectly assumes here that *Dep't of Employment* necessarily renders it likewise immune from jury trial and punitive damages. "Immunity of corporate government agencies from suit and judicial process, and their incidents, is less readily implied than immunity from taxation." *Fed'l Land Bank v. Priddy,* 295 U.S. 229, 235, 55 S.Ct. 705, 708, 79 L.Ed. 1408 (1935).

where federal governmental corporations are concerned. [Citing *Keifer & Keifer*]. Hence, when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued," it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to "sue and be sued" is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, [citation omitted] that an implied restriction of the general authority is necessary to avoid a grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense. In the absence of such a showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue and be sued," that agency is not less amenable to judicial process than a private enterprise under like circumstances would be.

*Burr*, 309 U.S. at 245, 60 S.Ct. at 490.

The *Burr* Court concluded Congress uses the words "sue and be sued" in their usual sense; "[c]learly the words "sue and be sued" in their normal connotation embrace all civil process incident to the commencement or continuance of legal proceedings." *Id.* at 245, 60 S.Ct. at 490. The Court held garnishment and attachment "commonly are part and parcel of the process, provided by statute, for the collection of debts" and are within the scope of FHA's "sue and be sued" clause.

In *RFC v. Menihan Corp.*, 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595 (1941), the Court concluded that litigation costs also fell within the scope of RFC's "sue and be sued" clause. Citing *Keifer & Keifer* and *Burr*, the Court found no indication Congress intended to endow RFC with sovereign immunity.

We apply the principle that there is no presumption that the agent is clothed with sovereign immunity.... We apply the farther principle that the words "sue and be sued" normally include the natural and appropriate incidents of legal proceedings. The payment of costs by the unsuccessful litigant, awarded by the court in the proper exercise of the authority it possesses in similar cases, is manifestly such an incident.

*Menihan*, 312 U.S. at 85, 61 S.Ct. at 487.

The Court held RFC's unqualified authority to sue and be sued placed it "upon an equal footing with private parties as to the usual incidents of suits in relation to the payment of costs and allowances." *Id.* at 85–86, 61 S.Ct. at 487.

The Court relied on this trilogy of cases in *Franchise Tax Bd. of Cal. v. United States Postal Service*, 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984), where it allowed garnishment of wages of postal service employees who were delinquent in payment of state income taxes. The Court held that *Burr* required not only liberal construction of the postal service's "sue and be sued" clause, but also a presumption that the postal service's liability is the same as that of any other business. *Franchise Tax Bd.*, 467 U.S. at 520, 104 S.Ct. at 2554.

In 1988 the Court decided *Loeffler v. Frank*, 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988). *Loeffler* involved a sex discrimination action brought under Title VII of the Civil Rights Act of 1964 against the United States Postmaster General in his official capacity by a former postal service employee. The *Loeffler* Court held the postal service's "sue and be sued" clause waived its sovereign immunity, and rendered it subject to an award for prejudgment interest in a Title VII suit.

In its clearest statement to date on the extent of sovereign immunity abrogated by "sue and be sued" provisions, the Court recognized Congress "has waived the sovereign immunity of certain federal entities from the times of their inception by including in the enabling legislation provisions that they may sue and be sued." *Loeffler*, 486 U.S. at 554, 108 S.Ct. at 1969. The Court held that by bestowing on the postal service the ability to sue and be sued, Congress "has cast off the Service's 'cloak of sovereignty' and given it

the 'status of a private commercial enterprise.'" *Id.* at 556, 108 S.Ct. at 1970 (citing *Library of Congress v. Shaw*, 478 U.S. 310, 317 n. 5, 106 S.Ct. 2957, 2963 n. 5, 92 L.Ed.2d 250 (1986)). In significantly clear language, the Court noted, "It follows that Congress is presumed to have waived *any otherwise existing immunity* of the Postal Service from interest awards." *Id.* at 556, 108 S.Ct. at 1970 (emphasis added). *See also, Int'l Primate Protection League v. Tulane Educ. Fund*, 500 U.S. 72, 87 n. 8, 111 S.Ct. 1700, 1709 n. 8, 114 L.Ed.2d 134 (1991) (citing *Burr* for the proposition that agencies authorized to sue and be sued "are presumed to have *fully* waived immunity unless, as to particular types of suits, there is clearly a contrary legislative intent." (emphasis added)).

The Court of Appeals as well has addressed the broad waiver effected by "sue and be sued" clauses. In *White v. Bloomberg*, 501 F.2d 1379, 1386 (4th Cir.1974), the court held the postal service's "sue and be sued" provision authorizes an award of post-judgment interest against it. Noting that *Menihan* established the proposition that the words "sue and be sued" include the "natural and appropriate incidents of legal proceedings," the *White* court wrote that "[b]ecause post-judgment interest is a normal incident of damages ... the principle of [*Burr* and *Menihan* ] suggests that a "sue and be sued" clause ordinarily should be construed to waive the agency's immunity from interest awards." *White*, 501 F.2d at 1385–86.

In *Gen. Elec. Credit Corp. v. Smith*, 565 F.2d 291, 292 (4th Cir.1977), the Fourth Circuit held the postal service's "sue and be sued" clause waived its immunity from garnishment procedures. The court wrote that absent congressional qualification, "the phrase "sue and be sued" ... is to be given its normal connotation and construction as a waiver of constitutional immunity, embracing *all civil legal procedures.*" *Id.* (emphasis added).

### III.

It is against this precedential background that this Court views ARC's assertion it retains sufficient residual sovereign immunity to shield it from jury trial and punitive damages. ARC is correct there exists no Seventh Amendment right to trial by jury in actions against the United States. *Lehman*, 453 U.S. at 160, 101 S.Ct. at 2701. But to extend *Lehman* so far as to find it dispositive of the issue in the present case would require this Court to ignore the Supreme Court's longstanding jurisprudence regarding "sue and be sued" provisions, as developed in *Keifer & Keifer, Burr, Menihan,* and their progeny.

*Lehman* was an age discrimination action against the United States Navy. *Lehman*, 453 U.S. at 158, 101 S.Ct. at 2700. The *Lehman* plaintiff brought suit against the sovereign itself, not against a federally chartered corporation with a "sue and be sued" clause.[6] The *Lehman* case is readily distinguishable from this one on grounds identical to those employed by the *Burr* Court to distinguish *Buchanan v. Alexander (supra* p. 1154): "That ruling was derived from the principle that the United States cannot be sued without its consent. There no consent whatsoever to 'sue and be sued' had been given. Here the situation is different." *Burr*, 309 U.S. at 244, 60 S.Ct. at 490.

Courts which have held *Lehman* extends to prohibit jury trials in actions against ARC consistently have ignored or given cursory analysis only to the Supreme Court's interpretation of "sue and be sued" clauses,[7] *see, e.g., Barton*, 826 F.Supp. at 414, and have applied the same immunity analysis applicable to suits against the federal government where a "sue and be sued" provision is absent. Supreme Court precedent indicates "sue and be sued" instrumentalities simply cannot be lumped with other governmental entities to analyze whether Congress intended they possess sovereign immunity; they are a separate species.

---

6. In fact, nowhere in *Lehman* is the phrase "sue or be sued" even mentioned.

7. Inexplicably, the courts in *Johnson* and *Berman* make no mention of *Loeffler, Franchise Tax Bd., Burr, Menihan,* or *Keifer & Keifer.*

ARC contends that although Congress chartered it as a "sue and be sued" corporation, it nonetheless retains immunity from jury trial and punitive damages because Congress did not waive that immunity "unequivocally." *Lehman,* 453 U.S. at 160–61, 101 S.Ct. at 2701–02. This argument fails. When Congress included in ARC's charter a "sue and be sued" clause, it stripped the corporation of its "cloak of sovereignty," and awarded it the "status of a private commercial enterprise." *Loeffler,* 486 U.S. at 556, 108 S.Ct. at 1970. The Court therefore presumes Congress waived "any otherwise existing immunity" ARC might have had in the absence of the "sue and be sued" provision.[8] *Id.* Unless ARC demonstrates an exception operates to overcome this presumption, no residual immunity remains to protect ARC from the same legal procedures utilized in actions against corporations unaffiliated with the federal government. *Id.; White,* 501 F.2d 1385–86.

To rebut the presumption, ARC clearly must show complete waiver of its sovereign immunity is inconsistent with the statutory or constitutional scheme, that it would gravely interfere with the performance of a governmental function, or that, for other reasons, it was the plain purpose of Congress to use the "sue and be sued" clause in a narrow sense. *Burr,* 309 U.S. at 245, 60 S.Ct. at 490.

The "exceptional freedom from legal responsibility" enjoyed by the government by virtue of its sovereign immunity "has been appropriately confined." *Keifer & Keifer,* 306 U.S. at 388, 59 S.Ct. at 517. Congress included "sue and be sued" provisions substantially identical to ARC's in the charters of most corporations organized under Title 36 of the United States Code.[9] To adopt ARC's theory of residual sovereign immunity would require the Court to assume Congress

**8.** *See also American National Red Cross v. S.G.,* — U.S. —, —, 112 S.Ct. 2465, 2477, 120 L.Ed.2d 201 (Scalia, J., dissenting): "The presence of [a "sue and be sued" clause] amidst a list of more or less ordinary corporate powers confirms what the words themselves suggest: It merely establishes that the Red Cross is a juridical person which may be party to a lawsuit in an American court, and that the Red Cross—despite its status as a federally chartered corporation—does not share the Government's general immunity from suit."

**9.** Other "patriotic societies" organized as corporations under Title 36 with charters containing "sue and be sued" clauses substantially identical to ARC's include: Agricultural Hall of Fame, 36 U.S.C. § 974; American Chemical Society, 36 U.S.C. § 3207; American Legion, 36 U.S.C. § 44; American National Theatre and Academy, 36 U.S.C. § 3303; American Society of International Law, 36 U.S.C. § 345; American Symphony Orchestra League, 36 U.S.C. § 3404; American War Mothers, 36 U.S.C. § 95; AMVETS, 36 U.S.C. § 67c; Aviation Hall of Fame, 36 U.S.C. § 4304; Belleau Wood Memorial Association, 36 U.S.C. § 63; Big Brothers–Big Sisters of America, 36 U.S.C. § 884; Blinded Veterans Association, 36 U.S.C. § 854; Blue Star Mothers of America, Inc., 36 U.S.C. § 944; Board for Fundamental Education, 36 U.S.C. § 504; Boy Scouts of America, 36 U.S.C. § 694; Boys' Clubs of America, 36 U.S.C. § 694; Civil Air Patrol, 36 U.S.C. § 205; Congressional Medal of Honor Society of the United States of America, 36 U.S.C. § 794; Disabled American Veterans, 36 U.S.C. § 90d; Foundation of the Federal Bar Association, 36 U.S.C. § 574; Frederick Douglass Memorial and Historical Association, 36 U.S.C. § 4402; Future Farmers of America, 36 U.S.C. § 274; Girl Scouts of the United States of America, 36 U.S.C. § 32; Jewish War Veterans, U.S.A., 36 U.S.C. § 914; Ladies of the Grand Army of the Republic, 36 U.S.C. § 78c; Legion of Valor of the United States of America, Inc., 36 U.S.C. § 634; Little League Baseball, Inc., 36 U.S.C. § 1074; Marine Corps League, 36 U.S.C. § 57b; Military Chaplains Association of the United States of America, 36 U.S.C. § 314; Military Order of the Purple Heart of the United States of America, 36 U.S.C. § 824; National Conference of State Societies, 36 U.S.C. § 403; National Conference on Citizenship, 36 U.S.C. § 434; National Council on Radiation Protection and Measurements, 36 U.S.C. § 4504; National Fund for Medical Education, 36 U.S.C. § 604; National Music Council, 36 U.S.C. § 664; National Safety Council, 36 U.S.C. § 464; National Tropical Botanical Garden, 36 U.S.C. § 4604; Nation Woman's Relief Corps, 36 U.S.C. § 1004; Naval Sea Cadet Corps, 36 U.S.C. § 1044; Navy Club of the United States of America, 36 U.S.C. § 140b; Paralyzed Veterans of America, 36 U.S.C. § 1154; Pearl Harbor Survivors Association, 36 U.S.C. § 3602; Reserve Officers Association, 36 U.S.C. § 224; Sons of the American Revolution, 36 U.S.C. § 20c; Sons of Union Veterans of the Civil War, 36 U.S.C. § 534; Theodore Roosevelt Association, 36 U.S.C. § 4702; United Service Organizations, 36 U.S.C. § 1303; United Spanish War Veterans, 36 U.S.C. § 56; United States Blind Veterans of the World War, 36 U.S.C. § 84; United States Olympic Committee, 36 U.S.C. § 374; Veterans of Foreign Wars, 36 U.S.C. § 114; Veterans of World War I, 36 U.S.C. § 764.

intended to share a substantial number of the benefits of its sovereign immunity with each of these instrumentalities. This cannot be the case. As the *Loeffler* Court recognized, Congress "has waived the sovereign immunity of certain federal entities from the times of their inception by including in the enabling legislation provisions that they may sue and be sued." *Loeffler*, 486 U.S. at 554, 108 S.Ct. at 1969. ARC has failed to demonstrate that waiver of its sovereign immunity is inconsistent with the statutory or constitutional scheme.

▇ Neither has ARC clearly shown that subjecting it to trial by jury and punitive damages would gravely interfere with the performance of a governmental function, nor that Congress plainly intended to use the "sue and be sued" provision narrowly. While it is beyond cavil that ARC performs a wide variety of functions important to the federal government, *see Dep't of Employment*, 385 U.S. at 359, 87 S.Ct. at 467, a government instrumentality does not acquire the government's immunity merely because it does government work. *Keifer & Keifer*, 306 U.S. at 388, 59 S.Ct. at 517. ARC's operations cannot be described as "exclusively" governmental; indeed, much of its work is not governmental in nature. The blood-banking services ARC performs, for example, are not mentioned in its congressional charter. 36 U.S.C. §§ 1–16.

ARC has made no clear showing to defeat the presumption that Congress intended to fully waive its sovereign immunity. The Court cannot on the mere assertions made here imply that Congress did not intend the full consequences of the "sue and be sued" provision it included in ARC's charter. *Burr*, 309 U.S. at 249, 60 S.Ct. at 492. There is no basis in law or policy for striking plaintiffs' request for a jury trial and punitive damages.

The Court recognizes its decision runs counter to the current weight of authority on this matter. *See, e.g., Young*, 698 F.Supp. at 1142–46; *In re Young*, 869 F.2d 158, 159; *Jones–Hailey v. Tennessee Valley Authority*, 660 F.Supp. 551, 552–53 (E.D.Tenn.1987); *Griffin v. United States Postal Service*, 635 F.Supp. 190, 192 (N.D.Ga.1986). *But see, Algernon Blair Indus. v. Tennessee Valley Authority*, 552 F.Supp. 972, 973–74 (N.D.Ala. 1982) (holding that because TVA has always been subject to direct lawsuit, *Lehman* did not extinguish plaintiff's right to a jury trial).

Most of the foregoing decisions were made without the guidance of the *Loeffler* Court. Although *Young* was decided after *Loeffler*, the *Young* court gave the case little attention.[10] Instead, the *Young* court grouped "sue and be sued" instrumentalities with other government entities, and subjected them to analysis under *Lehman*. On review, the Second Circuit recognized that "sue and be sued" provisions constitute broad waivers of immunity "and have subjected the federal government and its agencies to many types of liability and process, including prejudgment interest, liability for costs, and garnishment and attachment proceedings," but concluded "the waiver of sovereign immunity does not, by itself, grant a right to trial by jury in an action against the federal government." *In re Young*, 869 F.2d at 159.

This Court does not read *Loeffler* and its predecessors so narrowly. The Supreme Court's consistent analysis and interpretation of "sue and be sued" clauses instruct that when Congress authorized ARC to sue and be sued, it abrogated the corporation's sovereign immunity, and gave it the "status of a private commercial enterprise." *Loeffler*, 486 U.S. at 556, 108 S.Ct. at 1970. As such, ARC is subject to jury trial and punitive

---

**10.** Another Southern District of New York case decided near in time to *Young* more extensively analyzed *Loeffler*. *Grandison v. United States Postal Service*, 696 F.Supp. 891 (S.D.N.Y.1988). The *Grandison* court considered whether a plaintiff who brought suit against the postal service under the Age Discrimination in Employment Act ("ADEA") has a right to a jury trial. The Court found there is no right to a jury trial in ADEA actions against federal employers, based on a limiting provision in the ADEA rendering particular portions of the act inapplicable to federal employers. Said the court: "Absent this limiting provision, the Court believes that plaintiff would have a right to a jury trial in light of *Franchise Tax* and *Loeffler*, each of which stress that Congress intended that the USPS be treated like a private commercial venture." *Grandison*, 696 F.Supp. at 895.

damages to the same extent as any private corporation.

For these reasons, the Court **DENIES** ARC's motion to strike plaintiffs' jury demand and for judgment on the pleadings as to plaintiffs' demand for punitive damages.