**Michael ROZAK, Plaintiff,**

v.

**AMERICAN RED CROSS BLOOD SERVICES, Defendant.**

**No. 3:96–CV–471RM.**

United States District Court, N.D. Indiana, South Bend Division.

Oct. 8, 1996.

Donald W. Pagos, Sweeney Dabagia Donoghue Thorne Janes and Pagos, Michigan City, IN, for plaintiff.

Robert G. Zeigler, Zeigler Carter Cohen and Koch, Indianapolis, IN, for defendant.

*MEMORANDUM AND ORDER*

MILLER, District Judge.

The defendant moves to strike the plaintiff's jury trial demand on the basis of immu-

nity to trial by jury. For the reasons that follow, the court denies the defendant's motion to strike the plaintiff's jury demand.

## I.

In June 1994, plaintiff Michael Rozak was hospitalized and received a transfusion of blood platelets that he alleges were supplied by the American Red Cross Blood Services ("ARCBS") and from which he alleges he contracted hepatitis. On May 20, 1996, Mr. Rozak brought a negligence action against the ARCBS in LaPorte County, Indiana Superior Court, and demanded a jury trial. ARCBS filed a notice of removal on June 24, 1996. ARCBS now seeks to strike Mr. Rozak's jury demand, arguing that it is immune to trial by jury as a federal instrumentality.

## II.

The ARCBS argues that Mr. Rozak's jury demand must be stricken because the Seventh Amendment jury trial right does not apply to actions against the government and its instrumentalities under the doctrine of sovereign immunity. Mr. Rozak contends that governmental immunity should not apply in this case because the Red Cross is supported primarily by private sources and its day-to-day activities are directed by the organization itself.

Several district courts, including another judge in this district, and one appellate court have addressed the issue presented in this case. *See, e.g., Marcella v. Brandywine Hosp.,* 47 F.3d 618 (3d Cir.1995) (Red Cross not immune from plaintiff's request for a jury trial in a negligence action based on a contaminated blood transfusion); *Doe v. Am. Red Cross,* 847 F.Supp. 643 (W.D.Wis.1994) (no immunity from jury trial in a negligence action); *Doe v. Am. Nat'l Red Cross,* 845 F.Supp. 1152 (S.D.W.V.1994) (finding no residual immunity remains to protect the American Red Cross from jury trials); *Berman v. Am. Red Cross,* 834 F.Supp. 286 (N.D.Ind.1993) (Red Cross immune to trial by jury); *Barton v. Am. Red Cross,* 826 F.Supp. 412 (S.D.Ala.1993) (Red Cross entitled to same immunities from litigation as federal government, including immunity from trial by jury); *Johnson v. Hosp. of the Medi-*

*cal College of Pa.,* 826 F.Supp. 942 (E.D.Pa. 1993) (Red Cross has sufficient connection with federal government to enjoy same immunity to trial by jury).

Chief Judge Sharp decided this issue in favor of the Red Cross in 1993. In *Berman v. American Red Cross,* 834 F.Supp. 286 (N.D.Ind.1993), Judge Sharp held that the American National Red Cross was sufficiently tied to the federal government that federal sovereign immunity entitled it to protection from a plaintiff's right to trial by jury. The plaintiff in *Berman* claimed she suffered excruciating pain and damages as a result of the defendant's negligent attempt to draw her blood. The court discussed *Lehman v. Nakshian,* 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981), an Age Discrimination in Employment Act case in which the Supreme Court held that the United States is immune from suit as a sovereign (unless it consents to be sued, for example, in a "sue and be sued" clause), and that the Seventh Amendment right to jury trial therefore never existed in a suit against the United States. *Lehman,* 453 U.S. at 160, 162 n. 9, 101 S.Ct. at 2701, 2702 n. 9. Because "when Congress has waived the sovereign immunity of the United States, it has almost always conditioned that waiver upon a plaintiff's relinquishing any claim to a jury trial," the *Lehman* court held that the appropriate presumption is against a jury trial right. *Id.* at 161, 101 S.Ct. at 2702. Congress must "clearly and unequivocally depart[ ]" from this practice; no jury trial right exists against the government absent an express grant of that right. *Id.* at 161–162, 101 S.Ct. at 2701–2702. The court held that Congress did not explicitly grant a jury trial right in suits against the federal government in the ADEA, and the plaintiff was not entitled to a jury trial. *Id.* at 162, 101 S.Ct. at 2702.

The next question the *Berman* court faced was whether to equate the Red Cross and the government for purposes of sovereign immunity and the protection it affords from jury trials. Noting that some courts have applied *Lehman* to organizations deemed "instrumentalities," like the Red Cross, and other courts have been reluctant to extend sov-

ereign immunity,[1] the court examined several factors in determining whether the Red Cross should enjoy immunity from jury trial, including "the source of funding, the status of the personnel, the accountability to the government and the nature of the Red Cross' duties." *Berman*, 834 F.Supp. at 291. The court noted that Red Cross has federally-provided headquarters, depends primarily on private funds to carry out its duties, that the President appoints eight of the fifty members of the Board of Governors, and is the subject of a yearly Department of Defense audit (paid for by the federal government). *Id.* The factor the *Berman* court found carried the most weight was that the Red Cross "must carry out the Government's obligations resulting from the Geneva treaties." *Id.* "The fact that the Government organized the Red Cross as a corporation rather than as an agency does not change the Red Cross' inherently governmental purpose nor, consequently, its immunity from suit." *Id.* at 292.

Since the *Berman* decision, the Third Circuit has reached the opposite result in the only published circuit court case to address the issue thus far. *See Marcella v. Brandywine Hosp.*, 47 F.3d 618 (3d Cir.1995). The plaintiff in *Marcella* became infected with Human Immunodeficiency Virus (HIV) from a blood transfusion she received during emergency treatment at a hospital. She sued the hospital and her treating physicians, as well as the American Red Cross and its Penn Jersey Regional Blood Service, who had collected the contaminated blood. The district court held that the plaintiff did not have a right to a jury trial for her claims against the Red Cross, and decided on the merits of the claim that the Red Cross did not cause the plaintiff's harm because although its donor questionnaire was outdated and faulty (in ascertaining potential sources of contaminated blood), the same donor had been allowed to give blood several months after the Red Cross had corrected and updated its screening procedures.

The Third Circuit reversed the district court's decision to deny the plaintiff a jury trial and remanded the case for a new trial because, although the evidence could sustain the court's finding, a jury might have found the Red Cross liable if it made different credibility and causation determinations. *Id.* The court examined the Red Cross, its charter, and its relationship with the government, and concluded that allowing jury trials against the Red Cross in personal injury suits is not inconsistent with and does not interfere with the Red Cross's role as defined in its charter:

> The collection and distribution of human blood for medical purposes is a commercial operation on the part of the Red Cross and other entities that operate blood banks. The nature of the enterprise and the identity of the supplier are matters to be considered in deciding whether an injured party has a right to a jury trial in a claim based on negligence.

> \*　　\*　　\*　　\*　　\*　　\*

> The American Red Cross is a unique organization. It was chartered by Congress as a federal corporation in 1905. 36 U.S.C. §§ 1–15. Its chief purpose at that time was to serve as the agency in this country to monitor and implement the requirements of the Geneva Convention applicable to the care of the sick, wounded, and prisoners in time of war. Later, the scope of its activity was expanded to include service to victims of natural disasters.

> \*　　\*　　\*　　\*　　\*　　\*

> Close cooperation with government is essential to the work of the Red Cross. A perception that the organization is independent and neutral is equally vital. The Red Cross charter provisions reflect an attempt to reconcile these objectives.

---

1. The court discussed *Hanna v. Federal Land Bank Ass'n of S. Ill.*, 903 F.2d 1159 (7th Cir. 1990), in which the Seventh Circuit found that a plaintiff bringing suit under the ADEA against a land bank was entitled to a jury trial because the bank, though a federally chartered instrumentality, was a private employer without sufficient governmental involvement to be exempt from jury trials. "Clearly ... *Hanna* shows that it takes more than a congressional designation as a federally chartered instrumentality to become protected by sovereign immunity." *Berman*, 834 F.Supp. at 290.

Some control by the federal government is demonstrated by a provision empowering the President of the United States to appoint eight of the fifty members of the Red Cross Board of Governors and to designate one of them to be its presiding officer. 36 U.S.C. § 5. The other seven appointees must be officials of various departments and agencies of the federal government, including at least one from the Armed Forces. Thirty governors are selected by the local chapters, and twelve are selected by the Board as members-at-large. *Id.*

An annual financial statement must be submitted to the Secretary of Defense, who audits the report at the expense of the Red Cross and forwards it to Congress. *Id.* §§ 6–7. The federal government furnishes a building in Washington, D.C. for the organization's headquarters which, however, is responsible for maintenance. *Id.* § 13.

Commissioned officers of the Army, Navy and Air Force may be detailed for duty with the Red Cross. 10 U.S.C. § 711a. It is given the privilege of purchasing supplies from the Armed Forces, *id.* §§ 4624–4625, 9624–9625, borrowing certain equipment, *id.* § 2542, and using government buildings for storing supplies. *Id.* § 2670. Red Cross employees, in some circumstances, may be furnished meals and quarters while on duty serving the Armed Forces. However, in this connection, "employees of the American National Red Cross may not be considered as employees of the United States." *Id.* § 2602.

The independence of the Red Cross is demonstrated in that its employees are not federal employees, its activities are supported primarily by private sources,* and its day-to-day activities are directed by the organization itself, not the government.

\* \* \* \* \* \*

The role of the organization and the extent to which it carries out purely governmental activity have some relevance. Those circumstances can be significant in determining whether jury trials would be inconsistent with the statutory scheme, or would gravely interfere with the performance of a governmental function.

Federally chartered corporations vary widely in the degree to which they assume basic governmental tasks. Charters that include "sue and be sued" clauses and that require annual reports to Congress have been granted to such diverse organizations as the Boy Scouts of America, the American Legion, Ladies of the Grand Army of the Republic, the National Safety Council, and The Foundation of the Federal Bar Association. Although such organizations undoubtedly have worthy objectives, they would not seem to require sovereign immunity.

The Red Cross is not given wholesale governmental immunity simply by virtue of its federal charter. But a relevant inquiry is whether, despite the lack of specific references to jury trials in its charter, the Red Cross is so deeply involved in the government that a prohibition may be implied as if the United States itself were the party. In our view, such a relationship does not exist.

The Red Cross sometimes works in a context in which it seems to be almost "an arm of the government." Nevertheless, the federal government does not manage the day-to-day activities of the organization, does not provide the funds to support its activities, and does not employ or grant civil service benefits to its workers. In addition, to properly fulfill its role as one

---

\* The Red Cross blood collection service, which is not mentioned in its charter, provides an important part of its revenues. In 1985, blood services provided 60.5% of the Red Cross' total revenues. Annual Report of the American Red Cross for 1985. In the most recent statement, "biomedial services" provided 77% of revenues. Annual Financial Report for 1993–1994. Interestingly, 62% of Red Cross' expenses were devoted to providing blood services, while only 5% were attributed to providing services to the Armed Forces. *Id.*

American Red Cross' blood services division maintains financial and managerial independence from its divisions which perform chartered activities, and generates significant "excess revenues." *Doe v. American Nat'l Red Cross*, 845 F.Supp. 1152, 1153 n. 4 (S.D.W.V.1994).

of the participants in international Red Cross activities and to enforce the provisions of the Geneva Convention, the Red Cross must be independent of the United States government. In weighing all of these factors and considering analogous decisional law, we are persuaded that the American Red Cross does not share sovereign immunity with the United States such that jury trials in personal injury suits would be inconsistent with, or interfere with, the role outlined in the organization's charter.** Accordingly, we hold that parties in litigation of this nature against the Red Cross are entitled to a trial by jury.

This court agrees with Chief Judge Sharp's approach to the issue in *Berman*, but, with the benefit of the *Marcella* court's thorough analysis, disagrees with the outcome to which it leads.[2] The American Red Cross is a not-for-profit corporation, chartered by the Congress of the United States, H.R.Con.Res. 120, 97th Cong., 1st Sess., 95 Stat. 1759 (1981), that must work closely with government while maintaining a perception of independence to fulfill its chartered purposes. Its federally chartered instrumentality status and the "sue or be sued" clause in its charter do not make the Red Cross a "federal agenc[y] per se" for purposes of the Supreme Court's holding in *Lehman* that Congress must expressly grant plaintiffs a jury trial right. *Hanna v. Federal Land Bank Ass'n of S. Ill.*, 903 F.2d 1159, 1162 (7th Cir.1990). And, though the Red Cross has sufficient ties to the federal government

to entitle it to tax-exempt status, *see Dep't of Employment v. United States*, 385 U.S. 355, 359, 87 S.Ct. 464, 467–68, 17 L.Ed.2d 414 (1966), this does not compel a finding that it is immune from jury trial, *Fed'l Land Bank v. Priddy*, 295 U.S. 229, 235, 55 S.Ct. 705, 708, 79 L.Ed. 1408 (1935) ("Immunity of corporate government agencies from suit and judicial process and their incidents, is less readily implied than immunity from taxation."); *see also Marcella*, 47 F.3d at 623 (noting that the Seventh Circuit held that federally chartered land bank was subject to jury trial, though they are immune from state and local taxes). The federal government provides the Red Cross's national headquarters, and pays for an annual Department of Defense audit. 36 U.S.C. § 13. The Red Cross also receives certain other governmental privileges with respect to supplies and equipment. *Marcella*, 47 F.3d at 622.

The Red Cross's duties (or more specifically those of the Red Cross Blood Services, the named defendant in this case) as implicated by the facts giving rise to this suit, however, have little connection to its chartered activities or the federal government. The Red Cross's original chartered mission involved wartime duties, which were later expanded to include peace-time activities.[3] The Red Cross's chartered duties do not mention blood services or the ARCBS. Though the ARCBS argues that it would not be "realistic or rational to view Red Cross blood services separately from the totality of important governmental Red Cross duties and obligations

** One district court remarked, "ARC has elected to participate and compete with private corporations in the blood services industry ... [and] [a]s a full-fledged industry participant ... should be subject to jury trial ..." *Doe*, 845 F.Supp. at 1153 n. 4 (S.D.W.V.1994).

*Marcella*, 47 F.3d at 621–624.

2. The *Berman* case is persuasive, rather than binding, authority on this court. *United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir.1987) ("A single district court decision ... is not binding on the circuit, or even on other district judges in the same district."); *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir.1987) (district court decisions are "entitled to no more weight than their intrinsic persuasiveness merits"); *Johnson v. Town of Trail Creek*, 771 F.Supp. 271, 274–275

(N.D.Ind.1991) ("The opinions of other district judges are entitled to whatever weight their intrinsic reasoning warrants.").

3. The Red Cross's duties include: "(1) furnish[ing] aid to the sick and wounded of Armed Forces in time of war in accordance with treaties of the United States of America has given its adhesion, ... (2) act[ing] in matters of voluntary relief and in accord with the military authority as a medium of communication between the people of the United States of America and their Armed Forces, ... [and] (3) [continuing] and carry[ing] on a system of national and international relief in time of peace and apply[ing] the same in mitigating the sufferings caused by pestilence, famine, fire, floods, and other great national calamities, and [devising] and carry[ing] on measures for preventing the same." *Berman*, 834 F.Supp. at 288 n. 1 (citing 36 U.S.C. § 3).

1188

under it's federal charter," the Red Cross itself makes such a distinction in its managerial structure. The Blood Services division of the American Red Cross maintains financial and managerial independence from those divisions of the Red Cross that perform governmentally chartered services. The Red Cross's blood banking services are not governmental in nature, but rather essentially constitute a private commercial enterprise that generates "significant excess revenues." *Doe v. Am. Nat'l Red Cross*, 845 F.Supp. 1152, 1153 (S.D.W.V.1994). These factors, in light of the circumstances of this case, tilt the balance away from equating the Red Cross or the ARCBS with the government, and away from extending the government's "armor of sovereign immunity" to shield the defendant from a jury trial.

### III.

For the foregoing reasons, the court denies the defendant's motion to strike the Plaintiff's demand for a jury trial (filed July 22, 1996 (# 5)).

SO ORDERED.