**Belinda MASON and Stephen Carden**

v.

**REGIONAL MEDICAL CENTER OF HOPKINS COUNTY and Trover Clinic, Inc.,**

**John Doe, Intervenor.**

**Civ. A. No. 87–0123–O(CS).**

United States District Court,
W.D. Kentucky,
Owensboro Division.

July 25, 1988.

Gary M. Weiss, Cheryl S. Karp, Weiss, Karp & Roseberry, Louisville, Ky., for plaintiffs, Belinda Mason and Stephen Carden.

Byron L. Hobgood, Franklin, Gordon, Hobgood & Troop, Madisonville, Ky., and William O. Guethlein, Boehl, Stopher, Graves & Deindoerfer, Louisville, Ky., for defendants, Regional Medical Center of Hopkins County and Trover Clinic, Inc.

Terry Noffsinger, Evansville, Ind., and Elizabeth E. Vaughn, Henderson, Ky., for intervenor, John Doe.

## MEMORANDUM OPINION

SIMPSON, District Judge.

Several discovery motions in this matter raise the single issue of the extent to which discovery may be taken from an as-yet unidentified blood donor whose blood donation has tested positive for the presence of Acquired Immune Deficiency Syndrome (AIDS) virus subsequent to its infusion into another person.

There is no dispute as to the essential facts. Belinda Mason (hereinafter "Mason") came to the Regional Medical Center of Hopkins County (hereinafter "Medical Center") on January 17, 1987, in order to have a child by Caesarean section. Complications resulted in extensive blood loss. The next day, January 18, Mason's uterus was removed. Additional extensive blood loss was experienced. On that day, six units of blood platelets were infused into Mason, four of which had not been tested for blood contaminants. Subsequent tests done on retained samples of those units revealed that one unit was contaminated with the AIDS virus. The donor of that unit has been identified by the Medical Center as donor # B0918. Mason has now tested positive for the presence of the AIDS virus herself.

The plaintiffs have brought this action against the Medical Center alleging negligent care, strict liability for supplying an unreasonably dangerous product, breach of an implied warranty of fitness and loss of consortium by Mason's husband, Stephen Carden. By amendment, the plaintiffs have added a claim against Trover Clinic, Inc. sounding in negligence.

Donor # B0918 has been permitted to intervene in this action as "John Doe" pursuant to KRS 422.315 in order to move for a protective order to keep his identity confidential. John Doe has been described by counsel in an affidavit as a non-homosexual married father who appears healthy and has suffered no ill-effects.

The plaintiffs seek John Doe's name and address as well as other discovery from him. They contend that such discovery may lead to relevant evidence of negligence on the part of the Medical Center in the course of obtaining, accepting, testing, and using John Doe's blood. Additionally, the plaintiffs suggest that they may have a cause of action against John Doe. No claim has been asserted against him to date.

Both the Medical Center and John Doe have objected to the disclosure of his name and address. First, it is alleged that the Medical Center should be permitted to protect the privacy of all volunteer blood donors and prevent personal information on them from becoming public. Second, the Medical Center urges that release of John Doe's name and address would inhibit future voluntary blood donations by the public upon which hospitals and blood banks rely. It has been stated that John Doe was a volunteer blood donor who did not receive payment.

The plaintiffs articulate several arguments with respect to the utility of the information they seek. They assert that if they cannot question John Doe on the facts surrounding his blood donation, the factual assertions of the Medical Center on this aspect will be unverified and not challengeable. It is also urged that John Doe could give evidence concerning the procedures utilized in the screening and blood drawing processes, and whether there was any reason to exclude him as a high-risk individual based upon the medical history he related to screening personnel.

We first address the claimed right of constitutionally protected privacy for blood donors. The right to privacy in general has been explored by courts in many contexts, including that of an individual's interest in avoiding disclosure of personal matters. See *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), and *Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed. 2d 867 (1977).

Several courts have considered the question of blood donor privacy in contexts similar, but not identical, to that presented here. In *Rasmussen v. South Florida Blood Service, Inc.,* 500 So.2d 533 (Fla. 1987), Rasmussen was struck by an automobile, and received 51 units of blood via transfusion during his subsequent hospitalization. About 14 months later, he was diagnosed as having AIDS. Attempting to prove that the source of his AIDS was in the blood he received, Rasmussen requested broad discovery, seeking records, documents, and other material indicating the names and addresses of the 51 blood donors. The Supreme Court of Florida, characterizing this request as a "fishing expedition", concluded that the probative value of

the discovery sought was dubious and that the potential significant harm to the unsuspecting donors outweighed Rasmussen's need for the information. The discovery was denied.

Addressing the privacy issue, the Florida Court read a number of United States Supreme Court cases as establishing "that the federal right to privacy extends protection in some circumstances against disclosure of personal matters." A right to informational privacy was also found in the Florida State Constitution, which contains a specific section on the right of privacy.

In *Taylor v. West Penn Hospital*, No. GD87–00206, Court of Common Pleas of Allegheny County, Pennsylvania, Civil Division (1987) (unpublished), the plaintiff received blood in the course of open-heart surgery. It was subsequently determined that a donor whose blood had been used during the operation tested positive for exposure to the AIDS virus. The plaintiff thereafter also tested positive for the presence of AIDS virus in his system. The plaintiff sought general information regarding the donor, all of which was provided except for the donor's name. In denying the plaintiff discovery of the donor's name, the Court examined the claimed right of constitutional privacy for blood donors. It observed that none of the decisions of the United States Supreme Court which consider the right of privacy could be viewed as resolving the claim of constitutional protection for the anonymity of blood donors. Distinguishing *Rasmussen* on the facts, the Court found the claim of constitutional privacy for blood donors to be "substantial" under the United States and Pennsylvania Constitutions, but also observed that because a person's interest in avoiding disclosure of personal matters is not absolute, there was no obvious constitutional bar to the discovery request. The Court, in denying discovery, rested its decision on non-constitutional grounds, finding that disclosure of blood donors' identities would inhibit the donation of blood generally.

In *Tarrant County Hospital District v. Hughes*, 734 S.W.2d 675 (Tex.App.—Ft. Worth 1987), petition for leave to file writ of mandamus denied (Tex.Sup.Ct. Nov. 5, 1987), *cert. denied* —— U.S. ——, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988), a suit for wrongful death alleging that the plaintiff's deceased was given blood transfusions which resulted in contraction of AIDS, the Court of Appeals of Texas reached an opposite conclusion. Considering whether or not to reveal the identities and addresses of the donors of the transfused blood, that Court considered *Whalen v. Roe* and other cases, and found that the trial court's order compelling identification of the blood donors was "not an impermissible violation of their rights to privacy." See also *Gulf Coast Regional Blood Center v. Houston*, 745 S.W.2d 557 (Tex.App.—Ft. Worth 1988).

While both *Taylor* and *Rasmussen* extend the holding of *Whalen v. Roe* to recognize a constitutional right of privacy against disclosure of personal matters, the United States Court of Appeals for the Sixth Circuit has not ventured quite so far. In *J.P. v. DeSanti*, 653 F.2d 1080, 1089–1090 (6th Cir.1981), the Court stated:

> Absent a clear indication from the Supreme Court we will not construe isolated statements in *Whalen* and *Nixon* more broadly than their context allows to recognize a general constitutional right to have disclosure of private information measured against the need for disclosure. Analytically we are unable to see how such a constitutional right of privacy can be restricted to anything less than the general "right to be let alone" that Justice Brandeis called for in *Olmstead v. United States*, 277 U.S. 438, 478; 48 S.Ct. 564, 572; 72 L.Ed. 944 (1928) (Brandeis, J., dissenting).... Inferring very broad "constitutional" rights where the Constitution itself does not express them is an activity not appropriate to the judiciary. In this context, we note that of the cases cited holding that there is a constitutional right to nondisclosure of private information, none cites a constitutional provision in support of its holding.... we conclude that the Constitution does not encompass a general right to nondisclosure of private information. We agree with those courts that have restricted the right of privacy to its boundaries as established in *Paul v.*

*Davis,* supra, and *Roe v. Wade,* 410 U.S. at 152, 93 S.Ct. at 726—those personal rights that can be deemed "fundamental" or "implicit in the concept of ordered liberty" ...

We, therefore, conclude that the claim of constitutionally protected blood donor privacy, under the facts of this case, is a claim beyond the boundaries of the right of privacy as established by the United States Supreme Court and the Sixth Circuit Court of Appeals. As such, it is rejected.

We next review the Medical Center's argument that the release of John Doe's name would inhibit future voluntary blood donations by the public. This "public policy" issue was addressed in *Taylor, Rasmussen,* and *Tarrant County Hospital District.*

In the former two cases, the Courts had little difficulty finding that revelation of blood donors' names, coupled with the potential for association with AIDS, would deter voluntary blood donations and would therefore result in a "chilling effect" on the ability of health care facilities to obtain a sufficient supply of blood.

In *Tarrant County,* the Court of Appeals of Texas reached an opposite conclusion, discounting the proposition that society's interest in a continuing blood supply overrides a party's need for personal information concerning blood donors.

There is little in this record to justify a ruling either way, except for the affidavit of Edwin Steane. This Court is reluctant to venture into the realm of public policy, that being the province of other branches of government. However, the ruling in this case obviates further consideration of the argument at this time.

We note that certain critical matters in this case have already been established without discovery from John Doe. The source of the AIDS virus has already been identified. The Medical Center admits that it did not perform the HTLV–III Antibody Test on John Doe's blood. Therefore, the information which John Doe may provide relates primarily to the initial screening procedures, and to the information he supplied or failed to supply to the screening personnel.

There are, therefore, less compelling factors shown in this case for the public disclosure of the donor's identity, at least at this stage of the proceedings.

Rule 26(c) of the Federal Rules of Civil Procedure provides:

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court ...

"Under the rules, the extent of discovery and the use of protective orders is clearly within the discretion of the trial judge." *Chemical and Industrial Corp. v. Druffel,* 301 F.2d 126, 129 (6th Cir.1962).

We conclude that John Doe should be required to give discovery, but that his identity should be kept confidential at this time and be revealed only to a limited number of persons. There is no reason why the stigma of an AIDS-related condition should publicly attach to John Doe absent some demonstrable necessity. The circumstances here do not yet demonstrate such a necessity. Of course, this is without prejudice to a later showing that the interest John Doe may have in concealing his identity is outweighed by other factors and interests.

Therefore, while we will order that his deposition may be taken by the parties and that he may be required to answer interrogatories, we will also order that proce-

**304**

dures be utilized so as to maintain the confidentiality of John Doe's identity at this time and to prohibit disclosure of his identity by those persons who gain knowledge during the discovery process. We will also limit the number of persons who will have this information by requiring that attorneys on each side designate one among them who will conduct discovery and prohibit revelation of the identity information to the parties or others absent further order of Court.

The Medical Center has also objected to revealing the identities of blood donors other than John Doe. Since the plaintiffs have only sought to compel information regarding John Doe, the motion by the Medical Center for a protective order regarding other donors will be granted.

A separate order will be entered in conformity with this Memorandum Opinion.