**Doris SAMPSON, et al., Plaintiffs,**

**v.**

**AMERICAN NATIONAL RED CROSS, et al., Defendants.**

**No. CA 3–90–2876–T.**

United States District Court, N.D. Texas, Dallas Division.

Sept. 24, 1991.

Terrence G. Turzinski, Law Offices of Alan Laufman, Dallas, Tex., for Sheila Marie Hobbs, et al.

Bruce M. Chadwick, Arnold & Porter, Washington, D.C., for American Nat. Red Cross, et al.

Stuart M. Gerson, Asst. U.S. Atty., Washington, D.C., for the U.S. Civ. Div.

## ORDER DENYING DEFENDANT'S APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S ORDER AND DENYING MOTION FOR PROTECTIVE ORDER

MALONEY, District Judge.

This matter is before the court on Defendant's September 17, 1991, Application for Review of Magistrate's Order Concerning Donor Discovery and Motion for Protection. As this court intends to deny Defendant's motions, *in toto*, it need not wait for a response from any party. Standing Order No. 1, § 2.3.

Defendant seeks a review of a September 6, 1991, order issued by Magistrate Judge William F. Sanderson, Jr. The order requires Defendant to provide Plaintiffs' counsel with the name and last known address of the blood donor whose blood has been implicated in the transmission of the human immunodeficiency virus to Plaintiffs' decedent, Lawrence Sampson. Defendant also moves this court to issue a protective order that prevents Plaintiffs from discovering any information relating to the identity of the donor, or otherwise taking discovery from the donor.

Defendant contends that the magistrate judge failed to employ the correct legal standard, inappropriately rejected testimony from experts and inadequately provided protection of the donor's interests.

A magistrate's ruling shall not be reversed, vacated or modified on appeal unless the district judge determines that the findings of the magistrate are clearly erroneous, or that the magistrate's ruling is contrary to law or constitutes an abuse of discretion. 28 U.S.C. § 636(b)(1)(A); Fed. R.Civ.P. 72(a); Appendix VI, Local Rule 4(b), United States District Court, Northern District of Texas. *See Arakelian v. National Western Life Ins. Co.*, 126 F.R.D. 1, 2 (D.D.C.1989); *United States v. Gypsum,*

333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). Upon review of the magistrate judge's September 6th order, Defendant's application and the relevant authorities, this court is of the opinion that the magistrate judge's order is not clearly erroneous or contrary to law. Accordingly, Defendant's application for review and motion for protective order should be denied.

It is therefore ORDERED that Defendant's application for review of magistrate's order concerning donor discovery is denied.

It is FURTHER ORDERED that Defendant's motion for protection order is denied.

## MEMORANDUM OPINION AND ORDER

WILLIAM F. SANDERSON, Jr., United States Magistrate Judge.

Pursuant to the District Court's orders of reference filed on August 6, 1991, came on to be heard Defendant American National Red Cross's Motion for Reconsideration and its Motion for Protective Order filed on July 26, 1991, and having considered the relevant pleadings and the statements of counsel for the affected parties, the court finds and orders as follows:

Previously on June 11, 1991, the magistrate judge entered an order on plaintiffs' motion which in part ordered the American National Red Cross (Red Cross) to provide plaintiffs with the name and last known address of the person shown to be the donor of blood which was transfused to Lawrence Sampson. It is this order on which the Red Cross seeks reconsideration and in its motion for protective order it asks that the court grant it protection from being required to disclose the donor's identity.

*Operative facts:* In September 1984 Sgt. Lawrence Sampson received a transfusion of a unit of blood which came from the American Red Cross. In December 1988 the Red Cross identified the blood which Sgt. Sampson received as being HIV contaminated. In December 1990 Sgt. Sampson died from an AIDS-related illness.

This action was filed by Sgt. Sampson's widow and others alleging *inter alia* that the screening procedures followed by the Red Cross in 1984 when the blood donation was obtained were improper and insufficient to properly determine whether the donor was infected with a disease which could be transmitted by transfused blood.

Plaintiffs argue that they need the identity of the donor so that they may depose the donor to determine the procedures which the Red Cross employed on the date that the contaminated blood was donated. The Red Cross claims that such information is not needed because plaintiffs can obtain Red Cross records which disclose the specific procedures followed to obtain the donor's blood. It further argues that court ordered disclosure would be contrary to public policy which seeks to maximize the number of units of blood which are voluntarily donated each year and that disclosure of the donor's identity would violate the donor's constitutional right of privacy.

*Public policy:* Red Cross's counsel submits that in the country at large the demand for blood, voluntarily donated, exceeds the current supply and that any action which might further diminish that supply should be avoided. It is difficult to argue against such a premise. However, its argument that disclosure of the donor's identity in this case would adversely affect voluntary blood donations is much more problematic and speculative.

Of the cases cited by the parties in their briefs, the earliest reported opinion in which a court held that public policy predominated over an injured party's interest in discovery is that of *Rasmussen v. South Florida Blood Service, Inc.*, 500 So.2d 533 (Fla.1987). Although the Florida Supreme Court observed that:

"Because there is little doubt that the prospect of inquiry into one's private life and the potential association with AIDS will deter blood donation, we conclude that society's interest in a strong and healthy supply will be furthered by the denial of discovery in this case,"

neither it, nor the lower appellate court identified the data relied on to support such conclusion. See *South Florida Blood Services, Inc. v. Rasmussen*, 467 So.2d 798 (Fla. 3d DCA 1985).[1]

In the earliest reported federal court decision, *Mason v. Regional Medical Center of Hopkins County*, 121 F.R.D. 300, 303 (W.D.Ky.1988), the court observed the divergence of courts' decisions regarding the public policy argument, but concluded that it need not be reached in light of the protection which the court imposed with regard to limiting disclosure of the donor's identity.

In three subsequent federal court opinions involving circumstances analogous to those in the instant case the courts found against disclosure based on public policy grounds, i.e. *Doe v. American Red Cross Blood Services*, 125 F.R.D. 646 (D.S.C.1989); *Coleman v. American Red Cross*, 130 F.R.D. 360 (E.D.Mich.1990); *Bradway v. American National Red Cross*, 132 F.R.D. 78 (N.D.Ga.1990).

In *Doe, supra,* at 649–50, the court noted that society's interests outweighed the plaintiffs' interest in deposing the donor. The court in *Coleman, supra,* at 362–63, relied primarily on the decision in *Doe* to warrant its refusal to require the Red Cross to identify blood donors. Similarly in *Bradway, supra,* at 80, the court relied on the holding in *Doe* in denying a motion seeking the identities of a large number of blood donors.[2]

On the other hand several courts have declined to accept the public policy argu-

---

**1.** See also *Krygier v. Airweld, Inc.,* 137 Misc.2d 306, 520 N.Y.S.2d 475 (N.Y.Sup.Ct.Kings Cty. 1987) where the defendant blood bank's public policy argument was sustained, but in which no data in support of the argument are identified; see also *Doe v. University of Cincinnati,* 42 Ohio App.3d 227, 538 N.E.2d 419 (Ct. of Apps., 10th Dist, Franklin Cty., Ohio, 1988).

**2.** As with the reported opinions, those unpublished opinions which the Red Cross has submitted with its supporting brief, i.e. Exhibits F through K, attached to its brief filed on July 26, 1991, uphold the public policy argument against the requesting party's interest in disclosure, but the factual information on which each court relied is not contained in the opinion or order.

ment—at least to the extent that it would result in precluding discovery of donors' identities altogether. e.g. *Tarrant County Hospital Dist. v. Hughes*, 734 S.W.2d 675, 680 (Tex.App.—Fort Worth 1987, no writ); *Gulf Coast Regional Blood Center v. Houston*, 745 S.W.2d 557, 560 (Tex.App.—Fort Worth 1988, no writ); *Belle Bonfils Memorial Blood Center v. Hon. J. Stephen Phillips*, 763 P.2d 1003 (Colo.1988) (*en banc*); cf. dissenting opinion of Chief Judge Swartz, *South Florida Blood Services, Inc. v. Rasmussen, supra*, 467 So.2d at 806. However, these opinions suffer from the same deficiency as those in which the public policy argument was sustained— the data relied upon to support the conclusion reached are not identified.

In support of the policy argument made in the present case the Red Cross has submitted the declarations of various experts. See Exhibits C through E, attached to the Red Cross's brief filed on July 26, 1991.

Drs. Benjamin and Sandler both work in Washington, D.C. Dr. Benjamin's declaration was filed in an action pending in the District of Columbia, but to the extent that it relates a circumstance similar to that in this action, he opines that the deposition of an infected blood donor would be contrary to public policy, being in contravention to provisions of the District of Columbia Code and because, in his firm judgment and belief, it would undermine the willingness of prospective donors to give blood. Dr. Sandler's declaration expresses similar concerns.

Dr. Kasprisin is the principal officer of the American Red Cross Blood Services, Red River Region in Wichita Falls, Texas. He expresses the same concerns and notes that in 1991 certain Red Cross Regions have had to import blood components from Red Cross organizations in Europe.

In response to the Red Cross's public policy argument plaintiffs observe that the unidentified donor is the only person with knowledge as to what procedures were followed or observed on the date that the blood donation was made. The Red Cross's counsel concedes that due to the passage of time and the large number of blood collection procedures which have been performed, the person or persons responsible for interviewing and collecting blood from the unidentified donor have no present recollection of the incident and would therefore need to rely on the records made at the time of the donation. Thus the donor is the only person with a possible present recollection of the procedures which were utilized.

■■■ It is rare that a public policy is so compelling as to warrant non-disclosure of the identity of a competent witness or barring a party from obtaining his testimony.[3] Despite the fact that some courts have permitted limited disclosure of a blood donor's identity, the Red Cross and its declarant experts have advanced no anecdotal or statistical evidence that voluntary blood donations have declined as a result of those judicial orders and opinions. Of particular significance is the lack of such information in Dr. Kasprisin's declaration. As the principal officer of a blood bank operating in Texas, if limited disclosure as permitted in *Tarrant County Hospital Dist. v. Hughes, supra*, had had an adverse affect on voluntary blood donations, one would expect some data to support that conclusion in the intervening four year period. Likewise the Texas Blood Bank Act, Tex.Health and Safety Code, § 162.001, et seq. (Vernon 1991), which codifies the procedures under which a donor may be identified and/or deposed in an action pending in a state

**3.** The policy argument advanced by the Red Cross parallels the informant privilege in the context of a criminal case. In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court held that when an informant was the only person in a position to amplify or contradict testimony of the government's witnesses, the government is required to disclose the informant's identity. While informants are not always so altruistically motivated

as blood donors, the risk to life and limb is greater than that to a blood donor of having his identity disclosed to a party or of being named as a defendant in a suit for monetary damages. Despite the concerns expressed by Justice Clark in dissent, *Roviaro*, at 71, 77 S.Ct. at 633, informants still come forward to assist law enforcement agencies in solving and prosecuting criminal offenses.

court, has been in effect for over two years. Were it to have had an adverse affect on blood donations, one would reasonably expect some tangible evidence to support the conclusion.

There is also a certain element of self-defense in the Red Cross's motion for protective order. Its counsel observed at the hearing that were the donor deposed, and if he were to testify in a manner inconsistent with the procedures reflected in the records, he would seek to impeach the donor's contrary testimony.

In the final analysis with an appropriate protective order, discussed *infra*, plaintiffs' need to obtain information from the unidentified donor is superior to the Red Cross's interest in not disclosing his identity on public policy grounds.

█ *Donor's right to privacy:* Plaintiffs initially argue that the Red Cross has no standing to assert the unidentified donor's privacy rights. Despite the fact that the Red Cross's attorney has never spoken to the donor to ascertain whether he desires anonymity, the law of this Circuit clearly supports the Red Cross's right to urge this basis on behalf of the donor. *Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d 328 (5th Cir.1981).

The Red Cross's assertion that the donor's interest in anonymity implicates his federal constitutional right of privacy is unsupported by the decisions of the United States Supreme Court and the jurisprudence of this Circuit. As compared to an individual's interest in confidentiality of sensitive personal information, the constitutional right to privacy restricts a governmental body's power to regulate or intrude on activity involving fundamental rights. e.g. *Carey v. Population Services International,* 431 U.S. 678, 685–688, 97 S.Ct. 2010, 2016–17, 52 L.Ed.2d 675 (1977); *Garcia v. United States,* 666 F.2d 960, 965 (5th Cir.) cert. denied 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982); *Ramie v. City of Hedwig,* 765 F.2d 490 (5th Cir.1985), cert. denied 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986).

Under such circumstances it is extremely questionable as to whether federal constitutional privacy rights arise in the context of discovery between private parties. It does not follow, however, that the donor's interest in limiting dissemination of his identity and information relating to him which are of a personal nature are not subject to protection. Indeed, courts are constantly called upon to enter orders under Rule 26(c), Federal Rules Civil Procedure, to protect persons from annoyance and/or embarrassment, when sensitive matters are at issue.

Despite my misgivings about the constitutional basis for the donor's privacy interests, I do not reach this issue, following the well established rule of construction that a court should avoid addressing constitutional issues except when necessary. Given that the right of privacy is not absolute, but rather involves a weighing of competing interests, e.g. *Nixon v. Administrator of General Services,* 433 U.S. 425, 459, 97 S.Ct. 2777, 2798, 53 L.Ed.2d 867 (1977), I am of the opinion that an appropriate protective order pursuant to Rule 26(c) can adequately protect the donor's interest, while giving plaintiffs access to relevant information.

*Protection to be provided under Rule 26(c):* Although plaintiffs' initial motion filed on May 30, 1991, was limited to the identify of the donor of the contaminated blood, it is clear that the sole purpose for such request was to enable them to depose the donor himself. According to the plaintiffs' pleadings and the statements of their counsel, they seek to depose the donor only for the purpose of obtaining his testimony concerning the procedures followed by the Red Cross when his blood was donated. None of the plaintiffs was present at the procedure, and therefore they, themselves, are not entitled to the donor's identity. Rather, disclosure will be limited to plaintiffs' counsel only and to any expert retained by plaintiffs on the issue of negligence.

To protect the identity of the donor, and in the event that his appearance for deposition is obtained pursuant to subpoena, to the extent that it be necessary to file any

papers relating to service, the same will be filed under seal.

Any papers filed by the parties to this action relating to the donor which identify the donor by name shall be filed under seal. In lieu of filing pleadings under seal, papers may be filed in the public record which refer to such person as "the donor" or a similar designation.

Any stenographically recorded or videotaped deposition of the donor shall be filed under seal.

The Red Cross also opposes plaintiffs' intention to record the donor's deposition by videotape. This issue need not be addressed at this time, but may be urged by the donor prior to his deposition in the event that he objects to videotaping as well as stenographic recording of his deposition. Similarly, I do not reach the scope of the questions to be propounded, but if plaintiffs seek information beyond which they presently represent that they intend to ask of the donor, he may seek further protection from the court as to the scope of inquiry.

IT IS, THEREFORE, ORDERED that the Red Cross's Motion for Reconsideration is denied and the Red Cross shall forthwith provide plaintiffs' counsel with the donor's name and last known address.

IT IS FURTHER ORDERED that the Red Cross's Motion for Protective Order is granted in part to the extent that the dissemination of the identity of the donor and the information obtained from him will be limited in accordance with the protective measures set out above. In all other respects its motion for protective order is denied.

IT IS FURTHER ORDERED that prior to disclosing any information to a retained expert, plaintiffs' counsel will insure that such expert is fully aware of the protection afforded by this order and that such expert agrees to abide by its terms.

IT IS FURTHER ORDERED that plaintiffs' counsel will serve a copy of this order on the donor on or before any deposition of the donor is commenced.