

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-15-1995

# Marcella v Brandywine Hosp

Precedential or Non-Precedential:

Docket 94-1691

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Marcella v Brandywine Hosp" (1995). *1995 Decisions.* Paper 51.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/51

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 94-1691

———————

CAROL MARCELLA; TIMOTHY MARCELLA; TIMOTHY
MARCELLA, as Natural Guardian for DAMON
MARCELLA; TIMOTHY MARCELLA as Natural
Guardian for ERIC MARCELLA,

Carol Marcella and Timothy Marcella,

husband and wife, Appellants.

v.

BRANDYWINE HOSPITAL; C.T. McCHESNEY, M.D.;
J.R. MONASTERIO, M.D.; DR. JOSE CABRIA; DR.
JOHN CAGGIANO; AMERICAN RED CROSS; PENN
JERSEY AMERICAN RED CROSS REGIONAL BLOOD
SERVICE; WILLIAM C. SHERWOOD, M.D.,

Appellees

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 92-cv-04207)

———————

Argued December 20, 1994

Before:  GREENBERG, SAROKIN, and WEIS, Circuit Judges

Filed February 15, l995

———————

Robert J. O'Shea, Jr., Esquire (ARGUED)
George W. Howard, III, Esquire
David E. Brenner, Esquire
Richard P. Hackman, Esquire
Charles A. Klein, Esquire
Michael A. Cancelliere, Jr., Esquire
GEORGE W. HOWARD, III, P.C.
1608 Walnut Street, Suite 1700
Philadelphia, PA  19103

Attorneys for Appellants

William J. O'Brien, Esquire
John A. Guernsey, Esquire
Howard M. Klein, Esquire
Patricia M. Hamill, Esquire
CONRAD O'BRIEN GELLMAN & ROHN, P.C.
1515 Market Street, 16th Floor
Philadelphia, PA  19102-1916

Jacqueline R. Denning, Esquire (ARGUED)
David P. Gersch, Esquire
Salley D. Rainey, Esquire
ARNOLD & PORTER
1200 New Hampshire Ave., N.W.
Washington, D.C.  20036

Edward L. Wolf, Esquire
Acting General Counsel
AMERICAN RED CROSS
17th & D Streets, N.W.
Washington, D.C.  20006

Attorneys for Appellees

_____

OPINION OF THE COURT
_____

Weis, Circuit Judge.

This is a negligence suit growing out of a transfusion of contaminated blood collected by the Red Cross through its volunteer donor program.  After a bench trial, the district court entered judgment in favor of the Red Cross.  In this appeal, we hold that the Red Cross is not clothed with governmental immunity and therefore the plaintiff's request for a jury trial should have been granted.  Accordingly, the case must be remanded for a new trial.  We concur with the district court's determination

that the donor of the blood may be required to testify, but under conditions that protect his anonymity.

Plaintiff, Carol Marcella, was infected with HIV as a result of a blood transfusion she received at Brandywine Hospital on February 5, 1985, in the course of emergency treatment for injuries sustained in an automobile accident. Her condition has deteriorated to the point that it is inevitable she will soon develop full blown AIDS. The blood had been donated through the Red Cross on January 29, 1985 by a homosexual male who was HIV+. He gave blood again on June 8, 1985. At that time, the Red Cross performed an ELIZA test, which can determine whether a blood sample is contaminated by HIV. That test did not receive approval from the Food and Drug Administration until March 1985 and was not available at the time of Marcella's transfusion. Through a "look back" program, the Red Cross discovered that she had received infected blood.

The complaint filed in the Common Pleas Court of Chester County, Pennsylvania, on July 14, 1988 named as defendants the hospital, the physicians who had treated plaintiff, and the American Red Cross. Plaintiff[1] did not ask for a jury trial, but the doctors and the Brandywine Hospital did file such demands.

The case was removed to the United States District Court for the Eastern District of Pennsylvania, and the hospital

---

[1]. For simplicity's sake, we will refer only to Carol Marcella as plaintiff. The suit was also filed on behalf of her husband and minor children.

renewed its demand for a jury trial. None of the other parties did so. The case was docketed in the district court as a jury trial. Shortly before the case was scheduled for trial, the Red Cross filed a motion "[t]o confirm that this was a nonjury trial." Plaintiff opposed the motion on the basis that she was entitled to the benefit of the jury trial demand filed by the hospital and doctors in the state court.

The district court ordered that the negligence counts against the hospital (the claims against the doctors having been dismissed) would be tried to a jury, but that the plaintiff's claim against the Red Cross would be decided in a bench trial. The court then severed the claims and proceeded first on the one against the Red Cross.

Before trial, the plaintiff's request for a discovery deposition of the donor of the contaminated blood was denied, although he was required to answer interrogatories. After proceeding for several days in the nonjury trial, the district judge arranged to take the testimony of the donor, under conditions that would assure his anonymity.

In its findings of fact and conclusions of law, the court decided that the Red Cross' policy of ascertaining potential sources of contaminated blood by submitting questionnaires to voluntary donors was faulty. The judge determined that the Red Cross was "properly chargeable with negligence for the unreasonable turgidity of its instructional materials" as well as for using outdated questionnaires when the donor first gave blood in January 1985.

However, because the donor again gave blood in June 1985, despite the questionnaires having been clarified,[2] the court decided that the negligence of the Red Cross was not a causative factor. "Donor X would not have been prevented from giving blood on January 29, 1985, even if the defendant had dotted all the `i's' and crossed all the `t's.'" Judgment was therefore entered for the Red Cross. Subsequently, summary judgment was entered in favor of the hospital.

The plaintiff has appealed only the judgment in favor of the Red Cross asserting: (1) that she was improperly denied the right to a jury trial; (2) that the court's analysis of the evidence was faulty; and (3) that some of the evidence about the donation on June 8, 1985 was inadmissible.[3]

I.

The evidence in this case would sustain the district court's finding that the Red Cross did not cause Marcella's harm. The judge, as factfinder, evaluated the demeanor, education and

---

[2]. Among other screening procedures, a brochure was given by the Red Cross to the donor in January 1985. It did not contain the guidelines on exclusion of high-risk groups recommended by the Public Health Service in December 1984. That guideline defined the high-risk group as homosexual and bi-sexual "[m]ales who have had sex with more than one male since 1979." Instead, the Red Cross brochure described the high-risk group as "[s]exually active homosexual or bisexual men with multiple partners (more than one)." However, the new guideline had been incorporated into the materials given to the donor when he again gave blood in June 1985.

[3]. We have reviewed the plaintiff's contention that the admission of certain evidence was erroneous and conclude that it lacks merit.

sophistication of the donor to determine that he would have persisted in giving blood even if the correct instruction had been given at the January donation.  The credibility evaluations of the donor were essential to the factual findings derived from his testimony.

However, a jury could properly make different credibility and causation determinations that would lead it to assess liability against The Red Cross.  Consequently, the record is not sufficient to establish the crucial facts as a matter of law and we would be compelled to reverse a directed verdict in a jury trial based on these facts.  See Amoco Oil Co. v. Torcomian, 722 F.2d 1099, 1100-01 (3d Cir. 1983); EEOC v. Corry Jamestown Corp., 719 F.2d 1219, 1225 (3d Cir. 1983) (Denial of trial by jury is reversible error unless a directed verdict would have been appropriate).  Consequently, if the district court erred in denying the plaintiff a jury, the case must be remanded for a new trial.

II.

The preliminary question, therefore, is whether plaintiff is entitled to a jury trial.  The issue is not a simple one, and the district courts that have considered the point are divided in their rulings.[4]  No Court of Appeals has considered the point in a published opinion.

_____

[4].  In the following published opinions, district courts have permitted jury trials against the Red Cross:  Doe v. American Nat'l Red Cross, 847 F. Supp. 643, 647 (W.D. Wis. 1994); Doe v. American Red Cross, 845 F. Supp. 1152 (S.D.W.V. 1994) (Red Cross also subject to punitive damages).  Other opinions have denied the right to jury trials against the Red Cross:  Berman v.

The collection and distribution of human blood for medical purposes is a commercial operation on the part of the Red Cross and other entities that operate blood banks. The nature of the enterprise and the identity of the supplier are matters to be considered in deciding whether an injured party has a right to a jury trial in a claim based on negligence.

The Red Cross contends that it is a federal instrumentality that shares governmental immunity to trial by jury. It is clear that the federal government itself is not subject to trial by jury unless it specifically consents. Lehman, Sec'y of Navy v. Nakshian, 453 U.S. 156, 160-61 (1981). The question here is whether, in this respect, the Red Cross is to be treated as part of the federal government.

The American Red Cross is a unique organization. It was chartered by Congress as a federal corporation in 1905. 36 U.S.C. § 1-15. Its chief purpose at that time was to serve as

(..continued)
American Nat'l Red Cross, 834 F. Supp. 286 (N.D. Ind. 1993); Johnson v. Hospital of Medical College of Pennsylvania, 826 F. Supp. 942 (E.D. Pa. 1993); Barton v. American Red Cross, 826 F. Supp. 412 (M.D. Ala. 1993), aff'd without op., 1994 U.S.App. Lexis 35582 (11th Cir. Dec. 16, 1994). Barton was appealed after the district court granted summary judgment to the Red Cross. Thus, the Eleventh Circuit's summary affirmance did not reach the jury trial question.

Interestingly, all the cited cases arose after the Supreme Court's decision in American Nat'l Red Cross v. S.G., 112 S. Ct. 2465 (1992). In Bentz v. American Red Cross, 932 F.2d 958 (3d Cir. 1991), we summarily affirmed a jury verdict against the Red Cross. The Red Cross never raised the immunity issue at either the trial or the appellate level.

the agency in this country to monitor and implement the requirements of the Geneva Convention applicable to the care of the sick, wounded, and prisoners in time of war.  Later, the scope of its activity was expanded to include service to victims of natural disasters.

The national Red Cross is designed to work in conjunction with societies in other nations and with the International Red Cross.  Emphasizing that its prestige and usefulness is based on neutrality, the Chairman of the American Red Cross commented in 1946, "[t]o preserve this vital principle intact, the International Red Cross Committee has always maintained that the national societies, while cooperating closely and cordially with their own governments and with other agencies, should at the same time remain independent."  Hon. Basil O'Connor, Annual Report of the American National Red Cross Corporation for 1946, at 19, reprinted in Wesley A. Sturges, The Legal Status of the Red Cross, 56 Mich. L. Rev. 1, 12  n.30 (1957), cited in Irwin Mem. Blood Bank of the San Francisco Medical Soc'y v. American Nat'l Red Cross, 640 F.2d 1051, 1057 (9th Cir. 1981).

Close cooperation with government is essential to the work of the Red Cross.  A perception that the organization is independent and neutral is equally vital.  The Red Cross charter provisions reflect an attempt to reconcile these objectives.

Some control by the federal government is demonstrated by a provision empowering the President of the United States to appoint eight of the fifty members of the Red Cross Board of

Governors and to designate one of them to be its presiding officer. 36 U.S.C. § 5. The other seven appointees must be officials of various departments and agencies of the federal government, including at least one from the Armed Forces. Thirty governors are selected by the local chapters, and twelve are selected by the Board as members-at-large. Id.

An annual financial statement must be submitted to the Secretary of Defense, who audits the report at the expense of the Red Cross and forwards it to Congress. Id. §§ 6-7. The federal government furnishes a building in Washington, D.C. for the organization's headquarters which, however, is responsible for maintenance. Id. § 13.

Commissioned officers of the Army, Navy and Air Force may be detailed for duty with the Red Cross. 10 U.S.C. § 711a. It is given the privilege of purchasing supplies from the Armed Forces, id. §§ 4624-4625, 9624-9625, borrowing certain equipment, id. § 2542, and using government buildings for storing supplies. Id. § 2670. Red Cross employees, in some circumstances, may be furnished meals and quarters while on duty serving the Armed Forces. However, in this connection, "employees of the American National Red Cross may not be considered as employees of the United States." Id. § 2602.

The independence of the Red Cross is demonstrated in that its employees are not federal employees, its activities are supported primarily by private sources,[5] and its day-to-day

_____

[5]. The Red Cross blood collection service, which is not

activities are directed by the organization itself, not the government.

The charter also provides that the Red Cross has "the power to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." 36 U.S.C. § 2. In American Nat'l Red Cross v. S.G., 112 S. Ct. 2465 (1992), the Supreme Court held that this provision authorized the Red Cross to remove actions pending against it in state court to federal district court, and that provides the jurisdictional basis in the case before us.

The Supreme Court has also held that the Red Cross is not subject to state taxation. In Department of Employment v. United States, 385 U.S. 355, 359-360 (1966), the opinion referred to the Red Cross as "virtually . . . an arm of the government," but pointed out:

> "In those respects in which the Red Cross
>
> differs from the usual government agency --
>
> e.g., in that its employees are not employees

(..continued)
mentioned in its charter, provides an important part of its revenues. In 1985, blood services provided 60.5% of the Red Cross' total revenues. Annual Report of the American Red Cross for 1985. In the most recent statement, "biomedial services" provided 77% of revenues. Annual Financial Report for 1993-1994. Interestingly, 62% of Red Cross' expenses were devoted to providing blood services, while only 5% were attributed to providing services to the Armed Forces. Id.

American Red Cross' blood services division maintains financial and managerial independence from its divisions which perform chartered activities, and generates significant "excess revenues." Doe v. American Nat'l Red Cross, 845 F. Supp. 1152, 1153 n.4 (S.D.W.V. 1994).

of the United States, and that government officials do not direct its everyday affairs -- the Red Cross is like other institutions -- e.g., national banks -- whose status as tax-immune instrumentalities of the United States is beyond dispute."

Id. at 160; see also Federal Land Bank v. Priddy, 295 U.S. 229, 235 (1935) ("Immunity of corporate government agencies from suit and judicial process . . . is less readily implied than immunity from taxation"); United States v. City of Spokane, 918 F.2d 84, 87-88 (9th Cir. 1990).

Irwin held that, although referred to in the tax cases as "an agency" or "instrumentality," the Red Cross is not "an agency" of the federal government for purposes of the Freedom of Information Act. That statute defines "agency" as including, among others, a "Government corporation" and a "Government controlled corporation." 5 U.S.C. § 552(f). Finding that the structure, activities and purposes of the Red Cross demonstrated that the organization was not subject to substantial federal control or supervision, Irwin held that it was not "an agency." The Court also noted legislative history that referred to such entities as the Tennessee Valley Authority and Amtrak as governmental units to be covered by the Freedom of Information Act. 640 F.2d at 1054.

The status of a federal "agency" or "instrumentality" as it might affect its amenability to a jury trial on a tort claim has received little appellate consideration. In Young v.

United States Postal Serv., 869 F.2d 158, 159 (2d Cir. 1989) (per curiam), the Court of Appeals held that the "sue and be sued" clause in the Postal Service charter did not expose it to a jury trial on an employee's claim of wrongful discharge.

The Young Court noted that the "sue and be sued" clause waived the sovereign immunity of the Postal Service to the extent that prejudgment interest could be recovered in a Title VII action against it. Id. (citing Loeffler v. Frank, 486 U.S. 549 (1988)). The Court also observed that some federal agencies are subject to liability for costs, garnishment and attachment proceedings. Id. (citing Reconstruction Finance Corp. v. J.G. Menihan Corp., 312 U.S. 81 (1941); Federal Housing Admin., Region No. 4 v. Burr, 309 U.S. 242 (1940)). Nevertheless, Young decided, "the party being sued is still the federal government," and the Postal Service charter did not contain language granting a jury trial. Id. at 159. Although not mentioned in Young, it is of some relevance that the Postal Service charter makes it subject to the Federal Tort Claims Act, 26 U.S.C. § 2680, which does not permit jury trials of personal injury claims.

In Hanna v. Federal Land Bank Ass'n of S. Ill., 903 F.2d 1159, 1162 (7th Cir. 1990), the Court of Appeals for the Seventh Circuit found that a plaintiff was entitled to a jury trial in an age discrimination suit against entities having less ties with the government than does the Postal Service. The defendants, Production Credit Associations and Federal Land Bank Associations, were "federally chartered instrumentalit[ies] of the United States," and had been given the power to "sue and be

sued."  12 U.S.C. §§ 2071, 2073, 2091, 2093.    The Hanna Court
found that the defendants were not "federal agencies per se"
because Congress' intention was that the land banks and credit
associations were to be owned and operated by farmers rather than
the federal government.  Hanna, 903 F.2d at 1162.  Therefore, the
defendants were "private employers without sufficient
governmental involvement to constitute federal agencies exempt
from jury trials."  Id.  It is worthy of note that land banks are
immune from state and local taxes.  Federal Land Bank v. Board of
County Comm'rs, 368 U.S. 146 (1961).

It may be seen that decisional law establishes that the
"sue and be sued" clause, without more, does not resolve the
question before us.

In many of the opinions discussing the status of
agencies or instrumentalities, the courts, by implication, extend
the shield of sovereign immunity of the government itself to
insulate some of the entities it created.  It may, however, be
more realistic to approach the issue by inquiring into the
attributes of sovereign immunity that Congress affirmatively
intended to grant "instrumentalities" and "federally chartered
corporations" when it created those entities.  See Reconstruction
Fin. Corp. v. J.G. Menihan Corp.  312 U.S. 81, 84 (1941).

In FDIC v. Meyer, 114 S. Ct. 996 (1994), the Supreme
Court held that agencies authorized to "sue and be sued" are
presumed to have fully waived sovereign immunity absent a

> "clea[r] show[ing] that certain types of
>
> suits are not consistent with the statutory

>            or constitutional scheme, that an implied
>            restriction of the general authority is
>            necessary to avoid grave interference with
>            the performance of a governmental function,
>            or that for other reasons it was plainly the
>            purpose of Congress to use the `sue and be
>            sued' clause in a narrow sense."

Id. at 1003 (internal quotation omitted).

An example of a narrow usage of the "sue and be sued" clause is in the statute creating the Postal Service.  Clearly, the Service retained some of the attributes it held earlier as an undoubted part of government.  The ban against jury trials of personal injury suits is such an instance.  By contrast, the statute creating the land bank system established new entities rather than altering the status of a former government organization.  That statute reflected no intent to give the government control over day-to-day operations.

In FHA v. Burr, 309 U.S. 242, 245 (1940), the Court held that "the words `sue and be sued' in their normal connotation embrace all civil process incident to the commencement or continuance of legal proceedings."  In Loeffler v. Frank, 486 U.S. 549 (1988), the Court described the clause as including "the natural and appropriate incidents of legal proceedings."  Id. at 555 (quoting Reconstruction Fin. Corp., 312 U.S. at 85).  Such "incidents" as garnishment and execution (Burr), prejudgment interest (Loeffler), costs (Menihan), and civil penalties (Commonwealth of Pa. Dep't of Envtl. Resources v.

<u>United States Postal Service</u>, 13 F.3d 62 (3d Cir. 1993)), have been found applicable in actions against federally created entities.

Those "incidents," however, differ in kind and quality with entitlement to a jury trial and it does not follow that the method of trial is necessarily included within the scope of the "sue and be sued" clause. A nonjury trial, after all, does provide civil process to resolve disputes and provides the additional remedies of garnishment, prejudgment interest and costs. Moreover, the fear has often been expressed that juries would award excessive sums against the Government, a factor absent from the other "incidents" that have been found to be encompassed by the "sue and be sued" clause.

The role of the organization and the extent to which it carries out purely governmental activity have some relevance. Those circumstances can be significant in determining whether jury trials would be inconsistent with the statutory scheme, or would gravely interfere with the performance of a governmental function.

Federally chartered corporations vary widely in the degree to which they assume basic governmental tasks. Charters that include "sue and be sued" clauses and that require annual reports to Congress have been granted to such diverse organizations as the Boy Scouts of America, the American Legion, Ladies of the Grand Army of the Republic, the National Safety Council, and The Foundation of the Federal Bar Association.

Although such organizations undoubtedly have worthy objectives, they would not seem to require sovereign immunity.

The Red Cross is not given wholesale governmental immunity simply by virtue of its federal charter.  But a relevant inquiry is whether, despite the lack of specific references to jury trials in its charter, the Red Cross is so deeply involved in the government that a prohibition may be implied as if the United States itself were the party.  In our view, such a relationship does not exist.

The Red Cross sometimes works in a context in which it seems to be almost "an arm of the government."  Nevertheless, the federal government does not manage the day-to-day activities of the organization, does not provide the funds to support its activities, and does not employ or grant civil service benefits to its workers.  In addition, to properly fulfill its role as one of the participants in international Red Cross activities and to enforce the provisions of the Geneva Convention, the Red Cross must be independent of the United States government.  In weighing all of these factors and considering analogous decisional law, we are persuaded that the American Red Cross does not share sovereign immunity with the United States such that jury trials in personal injury suits would be inconsistent with, or interfere with, the role outlined in the organization's charter.[6]

---

[6]. One district court remarked, "ARC has elected to participate and compete with private corporations in the blood services industry . . . [and] [a]s a full-fledged industry participant . . . should be subject to jury trial . . . ." Doe, 845 F. Supp. at 1153 n.4 (S.D. W.V. 1994).

Accordingly, we hold that parties in litigation of this nature against the Red Cross are entitled to a trial by jury.

### III.

Having concluded that the Red Cross' status is no bar, we must consider whether plaintiff waived her rights because she did not specifically request a jury trial. As noted earlier, the plaintiff's complaint in state court requested a nonjury trial,[7] but the hospital and doctors defendants did demand a jury.

Federal Rule of Civil Procedure 81(c) provides that, in cases removed to the district court, a party who made a demand for a jury trial in accordance with state law need not repeat the request after removal. The Rule further provides:

> "If state law applicable in the court from
> which the case is removed does not require
> the parties to make express demands in order
> to claim trial by jury, they need not make
> demands after removal unless the court
> directs that they do so . . . ."

Plaintiff's position is that under Pennsylvania law, if any party requests a jury trial, all other parties may rely upon that demand. A request for jury trial may not be withdrawn without the consent of all parties who have appeared in the

---

[7]. Plaintiff's counsel assertedly did so in order to escape paying a jury fee, in the expectation that the defendant hospital would -- as it did -- ask for a jury trial. Such a practice borders on "gamesmanship" that might expose a lawyer to severe criticism if it were important that a plaintiff receive a jury trial.

action.  Pa. R. Civ. P. 1007.1(c).  "[T]he Rule apparently seeks to protect the rights of those parties who did not make the demand for jury trial . . . ."  McFarlane v. Hickman, 492 A.2d 740, 743 (Pa. Super. Ct. 1985).  See also Recht v. City of Pittsburgh, 545 A.2d 450, 452 (Pa. Commw. Ct. 1988) ("where the circumstances indicate the possibility of reliance, any doubts should be resolved in favor of allowing a jury trial").

At the time of removal, the plaintiff's right to a jury trial had been perfected, and appropriately, the case was docketed in the district court as a jury case.  Not until approximately ten months after removal did the Red Cross file its motion to reclassify the case as nonjury.

The Red Cross argues that the issues between it and the plaintiff differ from those raised in the claims against the hospital.  Relying on Fed. R. Civ. P. 38(d) and Rosen v. Dick, 639 F.2d 82, 91-96 (2d Cir. 1980), the Red Cross contends that plaintiff is entitled to rely on a jury trial demand only as to the issues between her and the hospital.  However, Fed. R. Civ. P. 38(d) applies to cases originally filed in the district court. Rule 81(c) governs removal cases, and it carries over the valid demand in the state court to the federal proceedings.[8]

---

[8].  We observe also, but find no reason to discuss, the fact that co-counsel for plaintiff filed his appearance in the state court sometime after the suit was commenced and included on the praecipe a demand for a jury trial.  The praecipe apparently was filed in the Court of Common Pleas within the time specified in Pa. R. Civ. P. 1007.1(a), which provides that a written demand for a jury trial may be filed and served not later than twenty days after service of the last permissible pleading.  "The demand shall be made by endorsement on a pleading or by a separate writing."  Id.  The Red Cross contends that plaintiff's co-

We conclude therefore that the district court erred in denying the plaintiff the right to a jury trial. The case must therefore be remanded for a new trial.

IV.

We must also consider whether testimony and discovery of a blood donor is subject to privilege. A substantial amount of case law has been developed over whether such discovery should be permitted. Courts have weighed potential adverse effects to the blood collection system and donors' privacy interests against the necessity of such testimony to recovery by victims of contaminated blood.[9]

(..continued)
counsel's appearance was never served. In addition, there is some question whether the demand was otherwise valid inasmuch as a praecipe is not considered to be a pleading.

[9]. See e.g., Watson v. Lowcountry Red Cross, 974 F.2d 482 (4th Cir. 1992); Coleman v. American Red Cross, 979 F.2d 1135 (6th Cir. 1992) (per curiam); Diabo v. Baystate Medical Ctr., 147 F.R.D. 6 (D. Mass. 1993); Sampson v. American Nat'l Red Cross, 139 F.R.D. 95 (N.D. Tex. 1991); Borzillieri v. American Nat'l Red Cross, 139 F.R.D. 284 (W.D.N.Y. 1991); Bradway v. American Nat'l Red Cross, 132 F.R.D. 78 (N.D. Ga. 1990); Boutte v. Blood Sys., Inc., 127 F.R.D. 122 (W.D. La. 1989); Doe v. American Red Cross Blood Servs., S.C. Region, 125 F.R.D. 646 (D.S.C. 1989); Mason v. Regional Medical Ctr. of Hopkins County, 121 F.R.D. 300 (W.D. Ky. 1988); Doe v. Puget Sound Blood Ctr., 819 P.2d 370 (Wash. 1991) (en banc); Most v. Tulane Medical Ctr., 576 So.2d 1387 (La. 1991); Snyder v. Mekhjian, 582 A.2d 307, 315 (N.J. Super. Ct. A.D. 1990), aff'd, 593 A.2d 318 (N.J. 1991); Belle Bonfils Memorial Blood Ctr. v. District Court, 763 P.2d 1003 (Colo. 1988) (en banc); Doe v. University of Cincinnati, 538 N.E.2d 419 (Oh. Ct. App. 1988); Rasmussen v. South Florida Blood Serv., Inc., 500 So.2d 533 (Fla. 1987); Krygier v. Airweld, Inc., 520 N.Y.S.2d 475 (N.Y. Sup.Ct. 1987); Tarrant County Hosp. Dist. v. Hughes, 734 S.W.2d 675 (Tex. Ct. App. 1987).

See also, Amy K. Johnson, Note, Watson v. Lowcountry Red Cross: The Fourth Circuit Speaks on Discovery Rights in Blood Transfusion Litigation, 71 N.C. L. Rev. 2084 (1993); Ann M.

The case before us is brought under the law of Pennsylvania. Because the Supreme Court of that state has ruled on the privacy issue of donors and established a conditional privilege, we will follow its lead. See Fed. R. Evid. 501 (in civil actions, where state law supplies the rule of decision as to claims or defenses, the privilege of a witness is determined by state law); see also Earl C. Dudley, Jr., Federalism and Federal Rule of Evidence 501: Privilege and Vertical Choice of Law, 82 Geo. L.J. 1781 (1994).

In Stenger v. Lehigh Valley Hosp. Ctr., 609 A.2d 796 (Pa. 1992), the state Supreme Court determined that the Pennsylvania Constitution provides a right of privacy that includes a right to be left alone, but that is not absolute. In blood contamination cases, that right must be balanced against victims' need to establish their claims and against the state's interest in preserving the integrity of the volunteer blood donation system. Id. at 802. The Court determined that the proper balancing of the various interests weighed in favor of permitting discovery, but on the condition that the identity of the donor not be disclosed. Id. at 803. Moreover, the court decided that its approach was consistent with Pennsylvania's

(..continued)
LoGerfo, Note, Protecting Donor Privacy in AIDS Related Blood Bank Litigation -- Doe v. Puget Sound Blood Center, 117 Wash.2d 772, 819 P.2d 370 (1991), 67 Wash. L. Rev. 981 (1992); Peter B. Kunin, Note, Transfusion-Related AIDS Litigation: Permitting Limited Discovery from Blood Donors in Single Donor Cases, 76 Cornell L. Rev. 927 (1992).

Confidentiality of HIV-Related Information Act, 35 P.S. §§ 7601-7612.

We will follow the Supreme Court of Pennsylvania's resolution of the issue and are confident that there is adequate flexibility in the Federal Rules of Civil Procedure to allow discovery while still preserving the donor's anonymity. We also agree with the district court's comment that a deposition or other discovery in cases of this nature should be conducted under judicial supervision.

V.

Because the case must be retried, we believe it appropriate to comment further on the somewhat novel discovery issue present here. It is obvious that discovery from the donor who supplied the contaminated blood would provide relevant information on the negligence issues in the case. The state court judge, before removal, conferred with the parties and, apparently out of concern for privacy interests of the donor, it was decided to submit interrogatories to preserve his anonymity. Before that approach could be implemented, the case was removed to the district court, where the parties again agreed to that general procedure.

After responses to the interrogatories were received, plaintiff moved to compel a discovery deposition of the donor. The Red Cross objected, and the district court denied plaintiff's motion on the grounds that

"(1) request is untimely [filed on the last day set for discovery];

(2) no genuine need has been shown;

(3) privacy interests of donor; [and],

(4) previous agreement has been adhered to."

Discovery matters of this nature are discretionary with the trial court and would not ordinarily be the subject of discussion on appeal.  However, events at the trial demonstrate that the district judge may wish to reconsider his previous ruling and permit the parties to take the discovery deposition of the donor.

After several days of testimony during the bench trial, the district judge stated to counsel, "I am increasingly persuaded that there is no way to have a really fair and objective determination of some of the issues in this case without having the testimony of Donor X under oath at some point. . . . It seems to me if on no other issue than causation, that is a crucial bit of evidence."  The judge, however, believed it would be inappropriate to have a discovery deposition at that time and that it would be preferable to have the testimony taken under judicial supervision.

After some further discussion, the lawyers and the court agreed that each of the parties would submit questions to the judge, who would propound them to the donor in chambers, in counsels' presence.  The lawyers were permitted to suggest additional questions as the testimony unfolded and would be permitted to cross-examine if they perceived a need.  Counsel for plaintiff did not suggest additional questions to the judge after the initial interrogation, but Red Cross' lawyer did.  However,

plaintiff now asserts that a discovery deposition should have been permitted.

Circumstances have changed since the initial denial of the plaintiff's request for the donor's discovery deposition. The testimonial procedure used during the bench trial was no doubt adequate for a sophisticated fact-finder like the able and experienced district judge to make the crucial findings of credibility. However, this case must now be tried to a jury and the parties will be required to reckon with the believability of the donor because the critical events occurred more than ten years ago. Moreover, because a human tendency to deny or attempt to excuse conduct that created disastrous consequences to a victim is not uncommon, a more extensive interrogation probably will be necessary. A wide-ranging discovery deposition most likely would be of great assistance to both parties and would improve the presentation to be made at trial.

In these circumstances, we believe that the trial judge should grant the request for a discovery deposition subject to judicial supervision -- perhaps in the presence of a magistrate judge or the trial judge himself -- but under conditions assuring the donor anonymity and placing transcripts under seal if that appears to be necessary. We see no reason why the donor could not be called to testify at trial under appropriate conditions.[10]

---

[10]. It occurs to us that it would be possible to protect the donor's anonymity at trial by displaying his photograph to the panel from which the jury will ultimately be selected. Before the usual voir dire questioning began and before the nature of the case was disclosed, the venire would be asked, without any reference to the donor's name or role, if any of them recognized

VI.

The judgment of the district court will be reversed, and the case will be remanded for a new trial.

(..continued)
the individual.  This procedure would probably prevent the unlikely, but possible, situation where the trial might have proceeded for some time before a juror might recognize the donor when he is called to testify.  This is merely a suggestion and we do not wish to limit the trial court's use of other measures that may be appropriate.